**MIDLOTHIAN BUTANE GAS COMPANY, INC., d/b/a Midtex LP Gas, et al., Appellants,**

v.

**HILCO ELECTRIC COOPERATIVE, INC., et al., Appellees.**

No. 10–99–135–CV.

Court of Appeals of Texas, Waco.

April 4, 2001.

Michael G. Cosby, Pakis, Giotes, Beard & Page, P.C., Waco, Henry Moore and Gregg Hill, Sims, Moore, Hill & Gannon, L.L.P., Hillsboro, for appellant.

Clay Barton, Patricia D. Pope, McGinnis, Lochridge & Kilgore, L.L.P., Austin, Martha McGregor, McGregor & Carmichael, P.C., Hillsboro, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

GRAY, Justice.

Rural Electric Cooperatives have existed in Texas since at least 1937. The purpose in creating such cooperatives was to encourage the electrification of parts of this great state that were not economically attractive to major utility companies. To encourage this type of enterprise, the legislature gave special incentives to these companies. They are created under a special statute known as the Electric Cooperative Corporation Act. Electric cooperatives created under the statutes are a special type of non-profit corporation. Because the cooperatives are creatures of the statutes under which they are created, they are limited by their creator to do certain things.

In this action for declaratory judgment, the very narrow question presented to the trial court for resolution by cross-motions for summary judgment, was whether an electric cooperative company can create and own a "for-profit" company. The trial court determined that the statutes permitted the creation and ownership of for-profit companies. The members of the cooperative challenging the cooperative's activities bring this appeal. Because we have determined that electric cooperatives are prohibited from creating and owning for-profit companies, we reverse the trial court's judgment and remand this cause to the trial court.

## THE ELECTRIC COOPERATIVE CORPORATION ACT

The Electric Cooperative Corporation Act is a comprehensive chapter of the Utility Code dealing with the creation, regulation and dissolution of electric cooperative corporations. TEX.UTIL.CODE ANN. § 161 (Vernon 1998 & Supp.2000). It "is complete in itself and is controlling." *Id.* § 161.005. The Chapter is to be "liberally construed" and "the enumeration of a purpose, power, method, or thing does not exclude similar purposes, powers, methods, or things." *Id.* § 161.003.

In 1997, the general civil statutes regarding electric cooperatives were modi-

fied and enacted as Chapter 161 of the Utility Code. Acts 1997, 75th Leg., R.S., ch. 166 § 1, 1997 Tex.Gen.Laws 713, 947, eff. Sept. 1, 1997. Also in 1997, the legislature amended the Property Code to provide that certain nonprofit corporations could use funds for rural scholarships and economic development. Acts 1997, 75th Leg., R.S., ch. 904, § 1, 1997 Tex.Gen.Laws 2847, eff. Sept. 1, 1997. The only funds they could use for this purpose were unclaimed funds which would have otherwise escheated to the state. Tex.Prop.Code Ann. § 74.3013 (Vernon 1995 & Supp. 2001). As part of the same bill, provisions of the acts granting powers to special nonprofit corporations had to be amended to allow those corporations to deliver the money to entities other than the State. Acts 1997, 75th Leg., R.S., ch. 904, §§ 2–6, 1997 Tex.Gen.Laws 2847, eff. Sept. 1, 1997. This included an amendment to the Utility Code, Chapter 161, the Electric Cooperative Corporation Act. *Id.* § 4.[1] Hilco Electric Cooperative contends that this amendment to the Electric Cooperative Corporation Act had the additional effect of authorizing electric cooperatives to thereafter engage in "any lawful activity."

Shortly after passage of the amendment, Hilco created a wholly owned subsidiary, organized under the general corporate laws. It is undisputed that the new corporation is "for-profit." The corporation sells propane gas to both members and non-members of Hilco. Several of Hilco's members objected to Hilco engaging in a for-profit venture.[2]

The complaining members and Hilco sought a judicial construction of whether the amended statute allowed an electric cooperative to own a for-profit company. The amended statute provides:

An Electric Cooperative may:

\* \* \*

(10) perform any other acts for the cooperative or its members or for another electric cooperative or its members, and exercise any other power, that may be necessary, convenient, or appropriate to accomplish the purpose for which the cooperative is organized, *including other or additional purposes that benefit members and nonmembers, either directly or through affiliates,* **described in Section A,** *Article 2.01, Texas Non–Profit Corporation Act (Article 1396–2.01, Vernon's Texas Civil Statutes).*

Tex.Util.Code Ann. § 161.121(10) (Vernon 1998, Supp.2000) (The italicized portion was added by the 1997 amendments. Bold added for emphasis).

The interpretive dilemma is twofold. What is described in the referenced Section A and to what does that description refer? These two questions must be examined together. We could be looking to the referenced section for a description of the "other or additional purposes," "members and nonmembers," or "affiliates," all

---

1. Actually after adopting the Utility Code and repealing the general statutes relating to electric cooperatives, the Legislature amended the repealed statute. The effect of the legislature's inadvertent amendment of the repealed statute is dealt with by the Government Code. Tex.Govt.Code Ann. § 311.031(c). It provides, in part, that the repeal of a statute by a code does not affect an amendment of the statute by the same legislature which enacted the code and that the amendment is preserved and given effect as part of the code. *Id.* Thus, it does not affect our analysis in this appeal. For ease of reference, we will cite to the current text of the Electric Cooperative Corporation Act.

2. While it appears from the voluminous record that at least some of the members complaining about Hilco's new venture were companies engaged in the propane business, this factor is of no consequence to the analysis of the meaning of the statute.

of which are mentioned earlier in the same portion of subsection (10). Because of the insertion of a comma between "affiliates" and the phrase which begins "described in Section A," we do not believe that the referenced section is intended to be a description of affiliates through which the electric cooperative can bestow benefits on the persons referenced. Because there is no description of "members and nonmembers" in the referenced Section A, it also seems clear that the reference cannot be intended to be a more expansive description of persons to whom the benefits could be provided.

Thus, we construe the reference to the nonprofit corporations act section as a description of the power for electric cooperatives to "perform any other acts . . . and exercise any other power, that may be necessary, convenient, or appropriate to accomplish the . . . *other or additional purposes* . . . described in Section A, Article 2.01, Texas Non–Profit Corporation Act (Article 1396–2.01, Vernon's Texas Civil Statutes)." TEX.REV.CIV.STAT.ANN. art. 1396–2.01 (Vernon 1980)(emphasis added).

Thus, we must look to the purposes described in the referenced article to determine the purpose or purposes the electric cooperative is empowered to fulfill. The referenced statute provides as follows:

Art. 1396–2.01. Purposes

A. Except as hereinafter in this Article expressly excluded herefrom, nonprofit corporations may be organized under this Act for *any lawful purpose* or purposes, which purposes shall be fully stated in the articles of incorporation. Such purpose or purposes may include, without being limited to, any one or more of the following: charitable, benevolent, religious, eleemosynary, patriotic, civic, missionary, educational, scientific, social, fraternal, athletic, aesthetic, agricultural and horticultural; and the con-

duct of professional, commercial, industrial, or trade associations; and animal husbandry. Subject to the provisions of Chapter 2, Title 83, of the Revised Civil Statutes of Texas, 1925, and of such Chapter or any part thereof as it may hereafter be amended, a corporation may be organized under this Act if any one or more of its purposes for the conduct of its affairs in this State is to organize laborers, working men, or wage earners to protect themselves in their various pursuits.

TEX.REV.CIV.STAT.ANN. art. 1396–2.01 (Vernon 1980)(emphasis added)(footnote reference omitted).

Hilco reaches into this description and pulls out the single phrase "any lawful purpose" as the description of the purposes authorized by the reference to this section. Hilco then argues it may engage in the creation and ownership of a for-profit corporation, because it is otherwise a "lawful purpose."

To accept Hilco's argument would mean there is no limit on the lawful activities in which an electric cooperative might engage. Hilco's attempt to use the single phrase, "any lawful purpose," as the scope of what is being described in the referenced statute misconstrues the purpose of the statute. If Hilco's interpretation is what the statute was designed to achieve, there was no need to refer to the Nonprofit Corporation Act. All the legislature would have had to say is that an electric cooperative had the power to perform any act in furtherance of a lawful purpose.

We believe that by referencing the entire "purposes" section of the Nonprofit Corporation Act, the purpose of the statute was to limit the phrase "other purpose or purposes" in the amendment of the Electric Cooperative Corporation Act to the description of the purposes in which nonprofit corporations could engage. The

overarching description of those purposes is that they are "nonprofit." Such a description is fundamentally at odds with the for-profit corporation which Hilco has created and owns.

We hold that Hilco is not authorized to create and own a "for profit" corporation. Thus, we reverse the trial court's judgment and remand this cause to the trial court for further proceedings consistent with this opinion.[3]

3. The members also challenged the constitutionality of the amendment to the Electric Cooperative Corporation Act as being a violation of the one subject rule. TEX CONST. art. III; § 35. Because of our disposition of the first issue, we need not reach the constitutional question. We do not reach constitutional issues unless absolutely required to do so to resolve the appeal. *San Antonio General Drivers, Helpers Local No. 657 v. Thornton,* 156 Tex. 641, 647, 299 S.W.2d 911, 915 (1957). Further, the record does not contain any indication that the attorney general was notified that the constitutionality of the statute was being challenged. TEX.CIV.PRAC. & REM. CODE ANN. § 37.006 (Vernon 1986); *Estate of Ross,* 672 S.W.2d 315, 317 (Tex.App.—Eastland 1984, writ ref'd n.r.e.), cert. denied, 470 U.S. 1084, 105 S.Ct. 1844, 85 L.Ed.2d 143 (1985).