**HILCO ELECTRIC COOPERATIVE, et al., Petitioners,**

v.

**MIDLOTHIAN BUTANE GAS COMPANY, INC., d/b/a Midtex LP Gas, et al., Respondents.**

No. 01–0336.

Supreme Court of Texas.

Argued on March 20, 2002.

Decided July 3, 2003.

Scott Steven Cooley, Marc O. Knisely, Patricia D. Pope, Clayton James Barton, Campbell McGinnis, McGinnis Lochridge & Kilgore, L.L.P., Austin, Martha McGregor, McGregor McGregor & Carmichael, Hillsboro, for petitioners.

Michael G. Cosby, Pakis Giotes Page & Burleson, P.C., Waco, Johnnie B. Rogers, Austin, Henry Moore, Gregg William Hill, Sims Moore Hill & Gannon LLP, Hillsboro, for respondents.

Justice JEFFERSON delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice ENOCH, Justice OWEN, Justice O'NEILL, Justice SCHNEIDER, Justice SMITH, and Justice WAINWRIGHT joined.

The primary issue in this case is whether the Electric Cooperative Corporation Act ("ECCA"), particularly as amended in 1997 by House Bill 3203, Act of May 24, 1997, 75th Leg., R.S., ch. 904, § 4, 1997 Tex. Gen. Laws 2847, 2849–50 ("H.B. 3203"), allows a nonprofit electric cooperative to create and own a for-profit subsidiary propane business. *See* TEX. UTIL.CODE § 161.001–.254. The district court granted summary judgment declaring that HILCO Electric Cooperative, Inc. could create and own HILCO United Services, Inc., which does for-profit business as HILCO Propane. The court of appeals reversed and remanded, holding that the ECCA prohibits electric cooperatives from creating and owning such companies. 43 S.W.3d 677, 678, 681. Although we disagree with the

breadth of the court of appeals' holding, we affirm its judgment.

We hold that the HILCO companies failed to establish conclusively that the creation and ownership of a for-profit propane business furthered a proper purpose for a cooperative created under the ECCA. Accordingly, the court of appeals correctly reversed the trial court's summary judgment for the HILCO companies. We also hold, however, that the ECCA entitles an electric cooperative to create and own a for-profit company if necessary, convenient, or appropriate to effectuate the Act's permitted purposes: rural electrification or purposes like those listed in article 1396–2.01(A) of the Non–Profit Act.

## I

### Background

The Texas Legislature enacted the ECCA in 1937 to promote rural electrification through the creation of electric cooperatives. *State ex rel. S.W. Gas & Elec. Co. v. Upshur Rural Elec. Coop. Corp.*, 156 Tex. 633, 298 S.W.2d 805, 807 (1957). HILCO Electric was formed under the ECCA to engage in rural electrification and currently provides electricity to rural cooperative members in Hill County, Dallas County, Ellis County, and McLennan County. HILCO Electric also owns one-hundred percent of the shares of HILCO Propane, a Texas corporation that sells and delivers propane gas to the general public for a profit.

Midlothian Butane Gas Company, Inc., Rodney R. Jenkins, Lynn B. Gray, Sam Crain, Don Duke, and David R. Heald (collectively, "Midlothian"), and a number of other companies and individuals sued HILCO Electric and HILCO Propane. All of the present plaintiffs are HILCO Electric members,[1] and some are propane

---

1. The ECCA provides:

A person is eligible to become a member of

dealers who compete with HILCO Propane. Midlothian sought a judgment (1) declaring that neither HILCO Electric nor HILCO Propane had the statutory authority to engage in the propane sales business and (2) permanently enjoining both HILCO companies from selling and distributing propane. The HILCO companies responded that state law, including the ECCA, as amended in 1997 by H.B. 3203, authorized HILCO Electric to create and own a for-profit company such as HILCO Propane.

Midlothian moved for summary judgment. The HILCO companies responded and filed a cross-motion for summary judgment. The district court denied Midlothian's motion for summary judgment and granted the HILCO companies' cross-motion, declaring that "Texas law, including the ECCA and H.B. 3203, permits HILCO Electric Cooperative, Inc. to create and own for-profit corporations, including HILCO United Services, Inc., d/b/a HILCO Propane," and that H.B. 3203 did not violate the one-subject rule of article III, section 35 of the Texas Constitution.

On appeal, the court addressed the question of "whether an electric cooperative company can create and own a 'for-profit' company" under the ECCA. 43 S.W.3d at 678. The court held that "electric cooperatives are prohibited from creating and owning for-profit companies." *Id.* The court of appeals reversed the trial court's judgment and remanded the cause to that court for further proceedings. *Id.* at 678, 681. Because of the court of appeals' disposition of the statutory construction issue, it did not reach the constitutional question. *Id.* at 681 n. 3.

We granted HILCO's petition for review to determine whether the ECCA permits an electric cooperative to engage in a for-profit business without regard to the purposes for which the cooperative exercises its powers. 45 Tex. Sup.Ct. J. 306 (January 10, 2002).

## II

### Discussion

The parties' dispute centers on the purposes and powers specified in the ECCA, as amended by H.B. 3203. The HILCO companies assert that, because the amendment expanded the purposes for which electric cooperatives could be organized, such cooperatives may create and own for-profit subsidiaries like HILCO Propane, as long as such ownership furthers "any lawful purpose." Midlothian contends that H.B. 3203 did not expand electric cooperatives' purposes and powers beyond permitting them to use unclaimed funds for certain charitable or nonprofit purposes. Alternatively, Midlothian asserts that, if H.B. 3203 enlarged electric cooperatives' purposes and powers, then the bill unconstitutionally encompassed more than one subject. Tex. Const. art. III, § 35.

### A

### The ECCA

The powers of electric cooperatives are solely "derived from, and therefore measured by, the Act which created them." *Upshur Rural Elec. Coop. Corp.*, 298

---

an electric cooperative if the person has a dwelling, structure, apparatus, or point of delivery at which the person does not receive central station service from another source and that is located in an area in which the cooperative is authorized to provide electric energy, and the person:

(1) uses or agrees to use electric energy or the facilities, supplies, equipment, or services furnished by the cooperative at the dwelling, structure, apparatus, or point of delivery; or
(2) is an incorporator of the cooperative. Tex. Util.Code § 161.065(a).

S.W.2d at 807. The ECCA states that the act "is complete in itself and is controlling." TEX. UTIL.CODE § 161.005. To frame the parties' arguments, then, we briefly review the ECCA's provisions establishing electric cooperative corporations' purposes and powers in the original 1937 Act and in H.B. 3203.

Section 3 of the 1937 ECCA, entitled "Purpose," provided that electric cooperatives could be organized "for the purpose of engaging in rural electrification." Act of March 30, 1937, 45th Leg., R.S., ch. 86, § 3, 1937 Tex. Gen. Laws 161, 162. Section 4 granted electric cooperatives certain powers, including the right to purchase and own "any and all real and personal property," and "all powers as may be necessary, convenient, or appropriate to effectuate the purpose for which the corporation is organized." *Id.* § 4, 1937 Tex. Gen. Laws at 637. In 1957, the Legislature amended slightly the "Purpose" provision but still authorized ECCA cooperatives "to engage in rural electrification." Act of May 8, 1957, 55th Leg., R.S., ch. 290, § 3, 1957 Tex. Gen. Laws 692, 692.

These statutes were published as article 1528b of the Texas Revised Civil Statutes. They were repealed in 1997 when the Legislature promulgated the Texas Utilities Code. Act of May 8, 1997, 75th Leg., ch. 166, § 9, 1997 Tex. Gen. Laws 713, 1018. The statute codifying the Utilities Code does not contain an express statement of the purposes for which an electric cooperative may be organized, but, generally, codification intends no substantive change. *Id.* § 1, 1997 Tex. Gen. Laws at 715. Consequently, under the statute codifying the Texas Utilities Code, rural electrification remained the only purpose for which an electric cooperative could be organized.

## B

### House Bill 3203

The same Legislature that repealed article 1528b of Texas Revised Civil Statutes passed H.B. 3203, entitled "AN ACT relating to the disposition of unclaimed funds by nonprofit cooperative corporations." Act of May 24, 1997, 75th Leg., R.S., ch. 904, § 4, 1997 Tex. Gen. Laws 2847, 2849–50.[2] Prior to H.B. 3203, electric cooperatives and other nonprofit corporations were required to forward unclaimed funds to the State Treasurer (now the Comptroller). *See* TEX. PROP.CODE § 74.301. H.B. 3203 amended the Property Code to grant specified nonprofit corporations the express power to use unclaimed funds for rural scholarship and rural economic development purposes. H.B. 3203, §§ 2–6. Apparently to facilitate that goal, H.B. 3203 also amended the Agriculture Code, the Texas Non–Profit Corporation Act, and the Cooperative Association Act to give the nonprofit corporations governed by those acts the power to "deliver money to a scholarship fund for rural students." TEX. AGRIC. CODE § 51.004(a)(6); TEX.REV.CIV. STAT. ANN. arts. 1396–2.02(18); 1396–50.01, § 6(5).

■ With respect to electric cooperative corporations, H.B. 3203 amended the "powers" provision of the ECCA to give them the power:

> [T]o do and perform, either for itself or its members, or for any other corporation organized under this Act, or for the members thereof, any and all acts and things, and to have and exercise any and all powers as may be necessary, convenient, or appropriate to effectuate the purpose for which the corporation is organized, *including other or additional*

---

**2.** Although H.B. 3203 purported to amend a repealed statute, such an amendment is considered part of the new code provision. TEX. GOV'T CODE § 311.031(c).

*purposes benefitting members and non-members, whether directly or through affiliates, described in Section A, Article 2.01, Texas Non–Profit Corporation Act (Article 1396–2.01, Vernon's Texas Civil Statutes).*

H.B. 3203, § 4 (emphasis in original to indicate additions)(now codified at Tex. Util.Code § 161.121(10)).[3] Section A of article 2.01 of the Non–Profit Act provides:

> Except as hereinafter in this Article expressly excluded herefrom, non-profit corporations may be organized under this Act for any lawful purpose or purposes, which purposes shall be fully stated in the articles of incorporation. Such purpose or purposes may include, without being limited to, any one or more of the following: charitable, benevolent, religious, eleemosynary, patriotic, civic, missionary, educational, scientific, social, fraternal, athletic, aesthetic, agricultural and horticultural; and the conduct of professional, commercial, industrial, or trade associations; and animal husbandry. Subject to the provisions of Chapter 2, Title 83, of the Revised Civil Statutes of Texas, 1925, and of such Chapter or any part thereof as it may hereafter be amended, a corporation may be organized under this Act if any one or more of its purposes for the conduct of its affairs in this State is to organize laborers, working men, or wage earners to protect themselves in their various pursuits.

Tex.Rev.Civ. Stat. Ann. art. 1396–2.01(A) (footnote omitted).

The HILCO companies argue that because H.B. 3203, section 4 refers to article 1396–2.01(A) of the Non–Profit Act, and that statute provides that corporations organized under the Non–Profit Act may be organized for "any lawful purpose," then electric cooperatives may also be organized for any lawful purpose, notwithstanding the more restrictive enumeration of purposes at the heart of section 2.01(A). To decide this issue, we must examine H.B. 3203 more closely.

Although stated in terms of powers, H.B. 3203, section 4 extends electric cooperatives' permissible purposes to those "described in Section A, Article 2.01, Texas Non–Profit Act." The purposes "described in Section A" include a general classification—"any lawful purpose"—followed by a list of twenty-one specific, permitted purposes: "charitable, benevolent, religious, eleemosynary, patriotic, civic, missionary, educational, scientific, social, fraternal, athletic, aesthetic, agricultural and horticultural; and the conduct of professional, commercial, industrial, or trade associations; and animal husbandry," as well as "organiz[ing] laborers, working men, or wage earners to protect themselves in their various pursuits." Tex.Rev.Civ. Stat. Ann. art. 1396–2.01(A). This list of permissible purposes comports with H.B. 3203's express intent to promote rural educational opportunities and rural economic development.[4]

3. Two years later, in 1999, the Legislature repealed section 4 of H.B. 3203, effective after the trial court proceeding in this case, and amended the powers provision of section 161.121(10) "to conform to 1997, 75th Leg., ch. 904 § 4." Act of April 23, 1999, 76th Leg., R.S., ch. 62, § 18.15(a), 1999 Tex. Gen. Laws 391, 391. While the language of the amendment differs slightly from H.B. 3203, the difference does not affect our analysis in this case.

4. It is clear that the Legislature did not intend to incorporate all of Article 2.01 of the Texas Non–Profit Corporation Act, or otherwise erase the line between electric cooperative corporations and Non–Profit Corporation Act corporations. Under Article 2.01 of the Non–Profit Corporation Act, corporations may not conduct their affairs for the purpose of organizing a "Rural Electric Co-operative Corporation." Tex.Rev.Civ. Stat. Ann. art. 1396 2.01(B)(3).

If, as the HILCO companies contend, the Legislature's objective was to allow electric cooperatives to engage in "any lawful purpose," the Legislature could have easily said so in H.B. 3203, section 4 itself. Because it did not do so, we reject the HILCO companies' contention that section 2.01(A)'s reference to "any lawful purpose" establishes the Legislature's intent to expand infinitely the purposes for which electric cooperatives can be organized. Instead, we apply the rule of *ejusdem generis,* which provides that when words of a general nature are used in connection with the designation of particular objects or classes of persons or things, the meaning of the general words will be restricted to the particular designation. *Carr v. Rogers,* 383 S.W.2d 383, 387 (Tex.1964); *see also Cleveland v. United States,* 329 U.S. 14, 18, 67 S.Ct. 13, 91 L.Ed. 12 (1946) ("Under the *ejusdem generis* rule of construction, the general words are confined to the class and may not be used to enlarge it."). Thus, we hold that the phrase "any lawful purpose," in the context of the ECCA's reference to section 2.01(A), is limited to purposes similar in kind or class to the twenty-one identified categories.[5]

This interpretation is consistent with the language of H.B. 3203. We find no indication that the Legislature intended to expand the purposes for which a corporation may be organized under the ECCA from "rural electrication" to "any lawful purpose" that fertile minds can fathom. H.B. 3203 amended the ECCA's powers provision to allow an electric cooperative to use its powers to effectuate those purposes described in section 2.01(A) of the Non-Profit Act. The expansion of electric coop-

eratives' permissible purposes beyond rural electrification, the listed purposes, and purposes of the same nature as those listed must be achieved through the legislative process and not indirectly by a strained interpretation of the statute's words. We conclude that under the ECCA, as modified by H.B. 3203, electric cooperatives may be formed for rural electrification purposes and may exercise their powers to effectuate that purpose, the purposes specifically described in the Texas Non–Profit Act, article 1396–2.01(A), and purposes of the same kind or class as those described therein.

We disagree, however, with Midlothian's contention and the court of appeals' interpretation that the limitation on electric cooperatives' purposes necessarily precludes them from engaging in any for-profit economic endeavor. 43 S.W.3d at 681. The court of appeals' inquiry did not distinguish between an ECCA corporation's purposes and the scope of its powers to accomplish those purposes. The ECCA grants electric cooperatives all the powers that are necessary, convenient, or appropriate to accomplish the cooperative's purposes, whether benefitting members or nonmembers, or whether accomplished directly or through affiliates. Tex. Util. Code § 161.121(10). They may "acquire, own, hold, maintain, exchange or use property or an interest in property, [as] necessary, convenient, or useful." *Id.* § 161.121(3). There is nothing in the ECCA that, per se, precludes ownership of an interest in a for-profit enterprise, provided that such activity is necessary, convenient, or appropriate to the cooperative's authorized purposes.

---

5. Our construction involves only the effect of H.B. 3203, section 4's language amending permissible purposes under the ECCA to include only those "other or additional purposes ... described in" section 2.01(A).

Thus, our holding should not be read to construe permissible purposes for nonprofit corporations generally under section 2.01(A) alone.

In their motion for summary judgment, the HILCO companies did not argue that ownership and operation of HILCO Propane was necessary, convenient, or appropriate to rural electrification, those purposes described in article 1396–2.01(A) of the Non–Profit Act, or purposes of the same general nature as those listed. Rather, HILCO sought judgment on the grounds that the ECCA, as amended by H.B. 3203, authorized an electric cooperative "to engage in any lawful activity." Because the HILCO companies did not establish that the creation and ownership of a for-profit propane business was necessary, convenient, or appropriate to a proper purpose under the ECCA, the case should be remanded.

Accordingly, we affirm the court of appeals' judgment reversing the trial court's judgment and remand this case for further proceedings consistent with this opinion. In light of our disposition of the first issue, we do not reach the respondents' argument that H.B. 3203 violates the Texas Constitution's one-subject rule.

Justice HECHT filed a concurring opinion.

Justice HECHT, concurring in the judgment.

While I agree that this case must be remanded to the trial court, I write to set out my understanding of the reasons for doing so, which I think are the same as the Court's.

Since it was first enacted in 1937, the Texas Electric Cooperative Corporation Act has enumerated certain powers of electric cooperative corporations and then added a catchall provision, which the parties have referred to as subsection 18, that a cooperative may—to use the current statutory language that has remained essentially unchanged over the years—

> perform any other acts for the cooperative or its members or for another electric cooperative or its members, and exercise any other power, that may be necessary, convenient, or appropriate to accomplish the purpose for which the cooperative is organized.... [1]

The operative phrase—"necessary, convenient, or appropriate"—is a broad one. The word "necessary" may mean "indispensable" [2] or much less, as Chief Justice Marshall observed:

> If reference be had to its use, in the common affairs of the world, or in approved authors, we find that ["necessary"] frequently imports no more than that one thing is convenient, or useful, or essential to another. To employ the means necessary to an end, is generally understood as employing any means calculated to produce the end, and not as being confined to those single means, without which the end would be entirely unattainable. [3]

*Black's Law Dictionary* defines "necessary and proper" as "appropriate and well

1. TEX. UTIL.CODE § 161.121(10); *see* Act of March 30, 1937, 45th Leg., R.S., ch. 86, § 4, 1937 Tex. Gen. Laws 161, 162–163 ("Each corporation shall have power ... (18) To do and perform, either for itself or its members, or for any other corporation organized under this Act, or for the members thereof, any and all acts and things, and to have and exercise any and all powers as may be necessary, convenient, or appropriate to effectuate the purpose for which the corporation is orga-

nized."), previously codified as TEX.REV.CIV. STAT. ANN. art. 1528b, § 4(18) (Vernon 1997), and repealed and recodified by Act of April 24, 1997, 75th Leg., R.S., ch. 166, §§ 1, 9, 1997 Tex. Gen. Laws 713, 953–54, 1018.

2. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1510–1511 (1961).

3. *McCulloch v. Maryland*, 4 Wheat. 316, 17 U.S. 316, 413–414, 4 L.Ed. 579 (1819).

adapted to fulfilling an objective."[4] "Convenient" means "suited to the needs or the circumstances of a particular situation".[5] Combined, the three words describe a very general power on which the provision imposes two restrictions: it must be exercised for an electric cooperative or its members, and it must be exercised to accomplish the cooperative's organizing purpose—that is, to provide for rural electrification.[6]

The ECCA was amended in 1997 by House Bill 3203 to add to the end of the catchall provision this clause:

> including other or additional purposes benefiting members and nonmembers, whether directly or through affiliates, described in Section A, Article 2.01, Texas Non–Profit Corporation Act (Article 1396–2.01, Vernon's Texas Civil Statutes).[7]

Except as provided by this clause, the Texas Non–Profit Corporation Act does not apply to electric cooperatives.[8] HB 3203 was titled, "relating to the disposition of unclaimed funds by nonprofit cooperative corporations",[9] and to that end it amended four statutes besides the ECCA and added a section to the Property Code.

About the time HB 3203 passed, petitioner HILCO Electric Cooperative, Inc., an electric cooperative corporation organized and operating under the ECCA, formed a for-profit corporation, HILCO United Services, Inc., doing business as HILCO Propane, as a wholly-owned subsidiary to market propane. Within weeks, six of HILCO Electric's members,[10] including four competitors of HILCO Propane, respondents in this Court, sued both corporations (collectively, "HILCO"), alleging that the ECCA did not authorize HILCO Electric to own and operate a for-profit corporation.[11] HILCO answered that its actions were permitted by state law.[12] The plaintiffs moved for summary judgment on their allegation that HILCO's actions were entirely illegal.[13] HILCO moved for summary judgment on its assertion that its actions were legal.[14]

---

4. BLACK'S LAW DICTIONARY 1052 (7th ed.1999).

5. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 497 (1961).

6. TEX. UTIL.CODE §§ 161.122–.123.

7. Act of May 24, 1997, 75th Leg., R.S., ch. 904, § 4, 1997 Tex. Gen. Laws 2847, 2849–2850.

8. TEX.REV.CIV. STAT. ANN. art. 1396–2.01(B)(3) (Vernon 1997) ("This Act shall not apply to any corporation, nor may any corporation be organized under this Act or obtain authority to conduct its affairs in this State under this Act ... [i]f any one or more of its purposes for the conduct of its affairs in this State is to organize ... Rural Electric Co-operative Corporations....").

9. 1997 Tex. Gen. Laws at 2847.

10. Midlothian Butane Gas Company, Inc., doing business as MidTex LP Gas; Rodney R. Jenkins; Lynn B. Gray; Sam Crain; Don Duke; and David R. Heald.

11. Plaintiffs alleged that "neither Subsection (18) of the Act [the ECCA], as amended by HB 3203, nor any other provision of the Act, authorized HILCO Electric to create or own [HILCO Propane], a 'for-profit' corporation."

12. Defendants asserted that "state law, including the ECCA and HB 3203, permits HILCO Electric to create and own for-profit corporations, including [HILCO Propane]".

13. Plaintiffs argued that "[t]he ECCA, either in its prior form or as amended by House Bill 3203, does not authorize HILCO Electric to engage in the sale and distribution of propane gas" and that "the ECCA does not authorize HILCO Electric to create or own 'for-profit' subsidiary corporations such as [HILCO Propane]."

14. HILCO argued: "The only issue to be resolved by this Court in the summary judgment motions filed by Plaintiffs and Defendants is

Neither the plaintiffs nor HILCO limited their contentions to the effect of HB 3203; both expressly relied upon the ECCA as a whole, and HILCO even invoked state law generally. But for reasons that are not apparent, neither the plaintiffs nor HILCO have ever actually argued anything but HB 3203. Specifically, neither the plaintiffs nor HILCO ever addressed in their motions for summary judgment whether the "necessary, convenient, or appropriate" provision of subsection (18), prior to the amendment by HB 3203, would permit an electric cooperative to own and operate a for-profit subsidiary in general, or HILCO Electric to own and operate HILCO Propane in particular. Why the parties thus limited their arguments is not apparent. The trial court's ruling was not so limited. In granting HILCO's motion and denying the plaintiffs', the trial court expressly held that "Texas law, including the ECCA and HB 3203, permits HILCO Electric Cooperative, Inc. to create and own for-profit corporations, including HILCO United Services, Inc., d/b/a HILCO Propane". The parties have not expanded their arguments on appeal, but the court of appeals, like the trial court, ruled broadly, holding that "electric cooperatives are prohibited from creating and owning for-profit companies" [15] and that "HILCO is not authorized to create and own a 'for profit' corporation." [16]

In this Court, petitioner HILCO and the respondents all agree that the principal issue is whether "electric cooperative corporations such as HILCO Electric Cooperative, Inc., have the legal authority to create and own for-profit subsidiary corporations such as HILCO United Services, Inc." As before, however, they argue only the effect of HB 3203. Respondents contend that "[i]t has not been disputed by Petitioners that there was no authority for this type of activity prior to 1997." Petitioners respond that "[t]he most that can be said with respect to prior statutory authority for HILCO's actions is that the parties' cross-motions for summary judgment focused only on HB 3203." The Court correctly concludes that we should not adjudicate the broader issue when the parties have limited their arguments to HB 3203. The most we should decide is whether HB 3203, by itself, authorizes electric cooperatives to own for-profit subsidiaries.

It rather clearly does not. The other amendments contained in HB 3203 all relate to "the disposition of unclaimed funds by nonprofit cooperative corporations", the title of the bill. That fact alone does not preclude the bill's amendment of subsection 18 from being broader, although respondents argue that if the amendment is broader than the title of the bill, the state violates the one-subject rule of article III, section 35 of the Texas Constitution.[17]

whether HILCO Electric has the power to create and own a for-profit subsidiary corporation like HILCO U.S. ... Whether the law permits HILCO Electric to do this requires an interpretation of the Electric Cooperative Corporation Act ("ECCA") and H.B. 3203, which amended the ECCA."

15. *Midlothian Butane Gas Co. v. HILCO Elec. Coop., Inc.*, 43 S.W.3d 677, 678 (Tex.App.-Waco 2001).

16. *Id.* at 681.

17. Tex. Const. art. III, § 35("(a) No bill, (except general appropriation bills, which may embrace the various subjects and accounts, for and on account of which moneys are appropriated) shall contain more than one subject. (b) The rules of procedure of each house shall require that the subject of each bill be expressed in its title in a manner that gives the legislature and the public reasonable notice of that subject. The legislature is solely responsible for determining compliance with the rule. (c) A law, including a law enacted before the effective date of this sub-

But the nature of the rest of HB 3203 certainly suggests that all of the provisions were intended to be read alike. HB 3203 obviously relaxes both of subsection 18's restrictions on electric cooperatives' general, catchall power: it allows electric cooperatives to act to benefit persons who are not members of cooperatives for "other or additional" purposes permitted by section 2.01 of the Texas Non–Profit Corporation Act. But the amendment cannot reasonably be read to add a type of authority altogether detached from the provision's core "necessary, convenient, or appropriate" limitation. To read the phrase, "including other or additional purposes", as including purposes wholly unrelated to "the purpose for which the corporation is organized", the immediately preceding phrase, is like saying that X's purpose is to fly airplanes, including boats. The general word "other" necessarily refers to a purpose related to the previously stated purpose,[18] rural electrification, and while "additional" could take in different purposes, "*including* ... additional" relates back to rural electrification. Though section 2.01 permits nonprofit corporations to be organized "for any lawful purpose or purposes", the reference to that provision in amended subsection 18 cannot reasonably be read apart from the "necessary, convenient, or appropriate" limitation. If HB 3203 allowed an electric cooperative to pursue "any lawful purpose", the amendment would not only swallow original subsection 18, it would gulp down the whole Electric Cooperative Corporation Act.

This is what I think the Court means by its *ejusdem generis* argument. Although the Court actually says, "we hold that the

section, may not be held void on the basis of an insufficient title.").

18.   *See Carr v. Rogers,* 383 S.W.2d 383, 387 (Tex.1964).

phrase 'any lawful purpose' ... is limited to purposes similar in kind or class to the twenty-one identified categories" in section 2.01,[19] I think it intends to construe only subsection 18, not section 2.01. That is, the Court's opinion should not be read to limit the purposes of nonprofit corporations under section 2.01. Nothing in this case requires us to construe section 2.01.

HILCO also argues that its expansive view of HB 3203 is supported by the provision that the bill added to the Property Code. Part of that provision, section 74.3013(g), states that nonprofit cooperative corporations

> may engage in other business and commercial activities, in their own behalf or through such subsidiaries and affiliates as deemed necessary, in order to provide and promote educational opportunities and to stimulate rural economic development.[20]

HILCO argues that operating a propane business will stimulate rural economic development. Presumably, HILCO would make the same argument for virtually any economic endeavor it chose to pursue. That reading of section 74.3013(g), like HILCO's reading of the amendment to subsection 18, would eviscerate virtually all of the limitations of the ECCA as well as other statutes governing other types of nonprofit cooperatives. By "stimulat[ing] rural economic development" the Legislature could not reasonably have meant engaging in any and every economic enterprise.

We have received briefs from eight amici curiae. One, an electric cooperative,[21] tells us that it has owned an interest in a

19.   *Supra* at 81.

20.   Tex. Prop.Code § 74.3013(g).

21.   Pedernales Electric Cooperative, Inc.

for-profit company that designs and markets software for other cooperatives and that its investment in that company has never been questioned as exceeding its authority under the ECCA. It argues that its ownership of a for-profit corporation is "necessary, convenient, or appropriate". Two others, also electric cooperatives,[22] say that they have formed for-profit affiliates since HB 3203, one to provide fiber-optic voice and data transmission, and the other to provide a range of services including internet access, cable television, natural gas, security, and fire protection. Three amici[23] argue that a national trend toward the convergence of the electric, gas, and telecommunications industries promises great benefits to rural customers if cooperatives can provide all of these services. These six amici urge that electric cooperatives not be prohibited from owning and operating for-profit corporations to engage in these activities. The Court's opinion clearly does not erect any such prohibition but simply leaves in place the long-standing statutory requirement that a cooperative's operations be "necessary, convenient, or appropriate" to accomplish rural electrification.

Two amici[24] express concern that the court of appeals' opinion could be read to hold that nonprofit corporations cannot own for-profit corporations. Notwithstanding any language in the court of appeals' opinion, nonprofit corporations are statutorily permitted to own for-profit corporations.[25] Implicit in the Court's remand of this case to the trial court is the assumption that HILCO Electric would be authorized to own and operate a for-profit subsidiary if it can show that doing so is "necessary, convenient, or appropriate" under ECCA. The amici's concerns thus do not survive this Court's opinion.

For these reasons, I join in the Court's judgment.

---

22. Denton County Electric Cooperative, Inc., doing business as CoServ Electric, and Trinity Valley Electric Cooperative, Inc.

23. National Rural Electric Cooperative Association, National Rural Utilities Cooperative Finance Corporation, and Texas Electric Cooperatives, Inc.

24. Texas Society of Association Executives and Texas Automobile Dealers Association.

25. Tex.Rev.Civ. Stat. Ann. art. 1396–2.02(A)(7) (Vernon 1997) ("... each [nonprofit] corporation shall have power ... [t]o purchase, re-

ceive, subscribe for, or otherwise acquire, own, hold, vote, use, employ, mortgage, lend, pledge, sell or otherwise dispose of, and otherwise use and deal in and with, shares or other interests in, or obligations of, other domestic or foreign corporations, whether for profit or not for profit, associations, partnerships, or individuals, or direct or indirect obligations of the United States or of any other government, state, territory, government district, or municipality, or of any instrumentality thereof.").