

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-15-00297-CV

TETRA TECH, INC.                                                         APPELLANT

V.

NSAA INVESTMENTS GROUP,                                                  APPELLEE
LLC

----------

## FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY
## TRIAL COURT NO. 096-275702-14

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

In a single issue, Appellant Tetra Tech, Inc. appeals the trial court's

summary judgment for Appellee NSAA Investments Group, LLC in their dispute

---

[1]*See* Tex. R. App. P. 47.4.

over the interpretation of indemnity and hold-harmless language in a commercial contract. We affirm.

## II. Factual and Procedural Background

NSAA entered a construction loan agreement with One World Bank. To facilitate the project's financing, NSAA, Tetra Tech, One World, and the general contractor entered into a "Funds Control & Inspection Services Agreement w/ Performance Guarantee" (FCA) for the project. The FCA appointed Tetra Tech as One World's agent, making it responsible for disbursement of construction loan funds to NSAA and its contractors. The FCA also contained an indemnity clause, which we reproduce in full in the analysis of the issue.

NSAA sued One World and then sought to subpoena Tetra Tech's records and to depose Angela Halverson, a Tetra Tech employee and the FCA's disbursement agent. Invoking the indemnity agreement, Tetra Tech sought to recuperate its attorney's fees, expenses, and costs incurred in responding to the subpoena, including the expenses associated with locating and producing approximately 300 pages of documents. Additionally, Tetra Tech sought reimbursement for attorney's fees, expenses, and costs related to preparing for and presenting Halverson for deposition. One World paid its one-half of the amount demanded by Tetra Tech, but NSAA refused, claiming that the indemnity agreement did not require NSAA to reimburse for attorney's fees, expenses, and costs incurred in responding to subpoenas or deposition notices.

2

When NSAA declined to reimburse Tetra Tech, Tetra Tech sued NSAA for breach of contract. On cross-motions for summary judgment, the trial court granted summary judgment to NSAA and denied Tetra Tech's motion.[2] This appeal followed.

## III. Discussion

In its single issue, Tetra Tech argues that the indemnity provision in the commercial contract between Tetra Tech and NSAA requires NSAA to indemnify Tetra Tech for attorney's fees, expenses, and costs incurred by Tetra Tech in responding to subpoenas from NSAA seeking documents and a notice for an out-of-state deposition related to NSAA's lawsuit against One World.

### A. Standard of Review

In a summary judgment case such as this, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). We

_____

[2]Tetra Tech attached the wrong contract to its motion for summary judgment, but NSAA attached the correct one to its response and cross-motion for summary judgment.

3

review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

Questions of law are appropriate matters for summary judgment. *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222 (Tex. 1999). Summary judgment is proper in cases such as this where the parties do not dispute the relevant facts. *Havlen v. McDougall*, 22 S.W.3d 343, 345 (Tex. 2000); *see G & H Towing Co. v. Magee*, 347 S.W.3d 293, 296–97 (Tex. 2011) ("The purpose of a summary judgment is to 'provide a method of summarily terminating a case when it clearly appears that only a question of law is involved and that there is no genuine issue of [material] fact.'") (quoting *Gaines v. Hamman*, 358 S.W.2d 557, 563 (Tex. 1962)).

When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary judgment evidence and determine all questions presented. *Mann Frankfort*, 289 S.W.3d at 848. The reviewing court should render the judgment that the trial court should have rendered. *See Myrad Props., Inc. v. LaSalle Bank Nat'l Ass'n*, 300 S.W.3d 746, 753 (Tex. 2009); *Mann Frankfort*, 289 S.W.3d at 848.

This case turns on a purely legal issue—the interpretation of a provision in the parties' contract—a provision that Tetra Tech asserts is unambiguous.[3]

_____

[3]NSAA did not file an appellee's brief or otherwise provide argument on appeal, but in NSAA's summary judgment response and cross-motion for summary judgment, it also took the position that the provision is unambiguous.

4

**B. Indemnity Clause**

Indemnity provisions are construed under the normal rules of contract construction, with the primary goal of determining the intent of the parties. *Assoc. Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 284 (Tex. 1998). In that endeavor, the objective, not subjective, intent of the parties controls, and the instrument alone is generally deemed to express that intent. *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 731 (Tex. 1981). Because indemnity provisions are construed under the normal rules of contract construction, if courts can give an indemnity provision a definite or certain legal meaning, it is unambiguous and can be construed as a matter of law. *See Classic C Homes, Inc. v. Homeowners Mgmt. Enters., Inc.*, No. 02-14-00243-CV, 2015 WL 5461517, at *3 (Tex. App.—Fort Worth Sept. 17, 2015, no pet.) (mem. op.) ("An indemnity agreement is unambiguous if it can be given a definite or certain legal meaning, and we will construe an unambiguous indemnity agreement as a matter of law."); *see also Assoc. Indem. Corp.*, 964 S.W.2d at 284.

Further, "We construe contracts 'from a utilitarian standpoint bearing in mind the particular business activity sought to be served' and 'will avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive.'" *Frost Nat'l Bank v. L & F Distrib., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (quoting *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987).

The indemnity clause at issue provides as follows:

5

21.    **Indemnity:** To the fullest extent permitted by law, lender, owner and contractor shall fully defend, indemnify and hold harmless Tetra Tech, Inc. and its officers, employees, agents, representatives, successors and assigns, from and against ***any and all claims, damages, losses, liabilities, suits, causes of action of whatever nature or character***, whether known or unknown, at law or in equity, whether arising by statute or common law, ***and all legal fees in defending same***, which may hereafter be asserted by any person or entity, ***penalties, expenses, and costs arising out of, related to, or in consequence of***, directly or indirectly, (i) ***bodily injuries,*** including but not limited to death, at any time resulting there from and sustained by any person or persons, (ii) ***damage to property,*** including but not limited to loss of use thereof, and/or (iii) ***any other damage, injury or loss,*** arising out of, related to, or in consequence of, the performance of any work by Tetra Tech, Inc., whether or not the injury or damage is caused or alleged to be caused, in whole or in part, by any wrongdoing, strict liability, breach of contract or warranty, or negligence of Tetra Tech, Inc. or its officers, employees, agents, representatives, successors and assigns.   [Emphasis added.][4]

Tetra Tech contends that this clause provides indemnity for attorney's fees, expenses, and costs associated with responding to the subpoena for its records and preparing for and attending the deposition of its employee, both related to the NSAA-One World lawsuit.   With regard to Tetra Tech's attorney's fees, we disagree.

## 1.  Attorney's Fees

The indemnity clause provides indemnity for "***any and all claims, damages, losses, liabilities, suits, causes of action of whatever nature or character***, whether known or unknown, at law or in equity, whether arising by statute or

---

[4]The original version, which is written entirely in capitalized letters, has been modified here for ease in reading.

6

common law, ***and all legal fees in defending same***, which may hereafter be asserted by any person or entity." Assuming the term "all legal fees in defending same" relates to "claims, damages, losses, liabilities, suits, [and] causes of action of whatever nature or character," and not just "causes of action," as NSAA argued before the trial court, Tetra Tech's attorney's fees would fall within the indemnity agreement only if NSAA's subpoena and deposition notice could fairly be characterized as a claim, damage, loss, liability, suit, or cause of action. And further assuming that the subpoena and deposition notice could be fairly characterized as a claim, damage, loss, liability, suit, or cause of action, the attorney's fees would be subject to indemnification only to the extent that they were incurred in "defending" against such claim, damage, loss, liability, suit, or cause of action.

Citing Black's Law Dictionary, Tetra Tech argues that the subpoena and deposition notice constitute a "claim" because they are a "demand for . . . a legal remedy to which one asserts a right." Even if we were to accept this partially-quoted definition as the legal definition of "claim" in this context, the subpoenas and deposition in this case do not meet that definition. In the broad context, subpoenas and depositions are not legal remedies. Rather, they are simply discovery tools used to support an assertion of the right to a legal remedy. *See* Tex. R. Civ. P. 176.1 (setting out subpoena form), 176.2 (stating that a subpoena must command the person to whom it is directed to either attend and give testimony at a deposition, hearing, or trial and/or produce and permit inspection

7

and copying of designated documents or tangible things in the person's possession, custody, or control), 176.3(b) (stating that a subpoena may not be used for discovery to an extent, in a manner, or at a time other than as provided by the rules governing discovery), 192.1(f) (oral or written depositions are permissible forms of discovery), 199.2 (setting out the procedure for noticing an oral deposition), 199.3 (stating that a party "may compel the witness to attend the oral deposition by serving the witness with a subpoena under Rule 176"); *see also* Paul D. Carrington, *Moths to the Light: The Dubious Attractions of American Law*, 46 U. Kan. L. Rev. 673, 682–83 (1998) (explaining that "[t]he need to prepare for trial led to the empowerment of lawyers to conduct investigations using diverse tools, some of which had origins in early practices of the English Court of Chancery," such as what are now subpoenas compelling testimony and production of documents and testimony in the form of depositions). That is, if someone "has a legal claim, he may use discovery *to aid* him in pressing that claim." Chris Martiniak, The Lawyer's Preparations § 7.01[B][4], *How to Take and Defend Depositions* (Aspen Publishers, Inc. 2007) (emphasis added).

And, as NSAA pointed out in its response and cross-motion for summary judgment, even if one narrows the context to procedural remedies, a subpoena or deposition notice is not an assertion of a right to a remedy. *Compare* Tex. R. Civ. P. 176 *and* 199, *with* Tex. R. Civ. P. 22 ("A civil suit in the district or county court shall be commenced by a petition filed in the office of the clerk.") *and* 47 (setting out requirements for original pleading setting forth a claim for relief). Rather, they

8

constitute the procedural remedy itself, used to obtain documents and testimony, to *support* a claim.[5]

But if we are to accept the Black's Law Dictionary definition that Tetra Tech suggests,[6] we will use the *entire* definition of the term—"A demand for *money, property, or a legal remedy* to which one asserts a right; esp., the part of a complaint in a civil action specifying what relief the plaintiff asks for. — Also termed *claim for relief* (1808)." *Claim*, Black's Law Dictionary (10th ed. 2014) (emphasis added). In this definition, the term "legal remedy" is the third in a series of specific

---

[5]In its response and motion NSAA argued to the trial court that as "a writ or order commanding a specific act," a subpoena is the remedy itself. NSAA stated,

> Parties do not demand a subpoena; counsel, in the capacity of "an officer of the court," issue subpoenas "in the name of 'The State of Texas'" (or other state), commanding production of documents, appearance at deposition, and so on. *See* Tex. R. Civ. P. 176. Just as a final judgment is fundamentally different from a petition, as an order is different from a motion, a subpoena is a different class of instrument from a claim.

[6]The definition urged by Tetra Tech is only one of four—the third enumerated—of general definitions that Black's Law Dictionary provides for the word "claim." *See Claim*, Black's Law Dictionary (10th ed. 2014). Black's also defines a "claim" as

> **1.** A statement that something yet to be proved is true <claims of torture>. **2.** The assertion of an existing right; any right to payment or to an equitable remedy, even if contingent or provisional <the spouse's claim to half of the lottery winnings> . . . **4.** An interest or remedy recognized at law; the means by which a person can obtain a privilege, possession, or enjoyment of a right or thing; CAUSE OF ACTION (1) <claim against the employer for wrongful termination>.

*Id.*

words that describe a type of ultimate relief that a plaintiff may seek in a civil lawsuit. Under the *ejusdem generis* rule of construction, its meaning is restricted by the two preceding terms—money and property. *Hilco Elec. Coop., Inc. v. Midlothian Butane Gas Co.*, 111 S.W.3d 75, 81 (Tex. 2003) (stating that "when words of a general nature are used in connection with the designation of particular objects or classes of persons or things, the meaning of the general words will be restricted to the particular designation" (citing *Cleveland v. United States*, 329 U.S. 14, 18, 67 S. Ct. 13, 15 (1946) (explaining that in applying the *ejusdem generis* rule "the general words are confined to the class and may not be used to enlarge it")))[7]

The terms "money" and "property" describe two types of final relief that are typically sought in a civil lawsuit—a claim for money damages or a claim for possession of or title to property. *See generally* Tex. R. Civ. P. 47(c)(1)–(5) (requiring that pleading setting forth a claim for relief set out the amount of monetary relief sought and whether non-monetary relief is requested), 783–809 (setting out rules for trespass to try title cases). Therefore, under the *ejusdem generis* rule, the phrase "or a legal remedy" must be limited to other types of

---

[7]Black's Law Dictionary's definition of *ejusdem generis* includes the following example of how the doctrine works: "[I]n the phrase *horses, cattle, sheep, pigs, goats, or any other farm animals*, the general language *or any other farm animals*—despite its seeming breadth—would probably be held to include only four-legged, hoofed mammals typically found on farms, and thus would exclude chickens." *Ejusdem generis*, Black's Law Dictionary (10th ed. 2014).

ultimate relief sought at the conclusion of a lawsuit, such as injunctive or declaratory relief.[8] *See generally* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001–.011 (West 2015) (declaratory relief), §§ 65.001–.045 (West 2008) (injunctions); Tex. R. Civ. P. 680–693a (injunctions). Because a subpoena or a deposition is not the type of relief to which a prevailing litigant would be entitled at the conclusion of the lawsuit, the rules of construction preclude us from including subpoenas and depositions within the definition urged by Tetra Tech. *See Hilco Elec. Coop.*, 111 S.W.3d at 81.

Furthermore, if the word "subpoena" or "deposition" is substituted for the word "claim" in the indemnification clause, consistent with Tetra Tech's argument that "claim" means "subpoena" or "deposition," the indemnity agreement would read as follows:

> [NSAA] shall fully defend, indemnify and hold harmless Tetra Tech . . . from and against . . . any and all subpoenas [or depositions] . . . and all legal fees in defending same.

Such a reading would run afoul of the principle that contract interpretation should be a utilitarian endeavor that does not lead to absurd results. *Clark v. Cotten Schmidt, L.L.P.,* 327 S.W.3d 765, 772 (Tex. App.—Fort Worth 2010, no pet.) (stating that "[w]e construe contracts from a utilitarian standpoint bearing in mind

---

[8]This interpretation is consistent with the remainder of the Black's Law dictionary definition upon which Tetra Tech relies, "*esp.* the part of a complaint in a civil action specifying what relief the plaintiff asks for." *Claim*, Black's Law Dictionary (10th ed. 2014).

11

the particular business activity sought to be served" (quoting *Frost Nat'l Bank*, 165 S.W.3d at 312 (internal quotations omitted)); *Pavecon, Inc. v. R-Com, Inc.*, 159 S.W.3d 219, 222 (Tex. App.—Fort Worth 2005, no pet.) (citing *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987); *Lane v. Travelers Indem. Co.*, 391 S.W.2d 399, 402 (Tex. 1965)).

Examining the business activity involved in the FCA, at its core, the agreement specifically defines the scope of Tetra Tech's work as the physical inspection of the construction of a movie theater, with related reporting obligations. As the supreme court has guided us, the indemnity agreement should be read with this particular business activity in mind. *See Frost Nat'l Bank*, 165 S.W.3d at 312. Reading the indemnity agreement in the context of the entire FCA, it serves to indemnify Tetra Tech for its legal fees spent in defending against an injured person or entity's claim for damages[9] that arise out of Tetra Tech's performance of work under the agreement. As pointed out by NSAA to the trial court below, for example, if Tetra Tech overlooked a construction defect that subsequently injured someone, resulting in that person's suing Tetra Tech for personal injuries or lost earnings, the agreement would indemnify Tetra Tech for the legal fees spent in defending against that action. Or if Tetra Tech made a mistake in authorizing the

---

[9]This would include bodily injuries under subsection (i), property damages under subsection (ii), or any other damage, injury, or loss under subsection (iii).

disbursement of construction loan funds, it would be indemnified for its legal fees in defending against any suit for money damages that followed.

The construction that Tetra Tech urges does not conform to the facts of this case. Witness subpoenas and deposition notices are not matters that are generally defended against, but to the extent that in a given situation they might,[10] those facts are simply not present here. Tetra Tech did not seek attorney's fees for filing defensive pleadings to avoid the subpoena or deposition. To the contrary, Tetra Tech seeks fees for *complying* with the subpoena and *participating* in the deposition.

Although in attorney Bruce M. Flowers's affidavit—which was attached to Tetra Tech's motion for summary judgment—he states that Tetra Tech "has engaged [the law firm] in regard to the [sic] *defending against* [the] deposition and documents subpoena," his subsequent recitation of the work actually performed demonstrates that the legal activities related to the subpoena and deposition were acts of compliance, not defiance.[11] [Emphasis added.] Because the summary

---

[10]For example, the filing of a motion to quash or motion for protective order might be construed as defending against a subpoena or deposition notice.

[11]The services Flowers described that related to the subpoena and deposition included: responding to the document and deposition subpoena; reviewing pleadings, motions, and other documents filed in the NSAA-One World lawsuit, including documents that Tetra Tech produced; corresponding with NSAA's and One World's attorneys; conducting legal research and developing strategy; and "coordinating, preparing for, attending and subsequently reviewing the deposition of Tetra Tech employee, Angela Halverson[,] which occurred in Seattle[,] Washington." All of the other legal activities Flowers enumerated were

13

judgment evidence does not show that Tetra Tech's attorneys spent any time "defending" against the subpoena or the deposition, the substitution of the words "subpoena" or "deposition" for the word "claim" in this agreement is not consistent with the facts of this case.

However, the same analysis does not apply with regard to indemnification for expenses and costs, because the provision for recovery of expenses and costs is not limited to those incurred in defense of a claim.

### 2. Expenses and Costs

As to expenses and costs, the indemnity agreement provides that NSAA

> . . . shall fully defend, indemnify and hold harmless Tetra Tech, Inc. and its officers, employees, agents, representatives, successors and assigns, from and against any and all . . . penalties, ***expenses, and costs*** arising out of, related to, or in consequence of, directly or indirectly . . . any other damage, injury or loss, arising out of, related to, or in consequence of, the performance of any work by Tetra Tech, Inc. [Emphasis added.]

Tetra Tech argues that it is entitled to recovery of "related expenses and costs" to "protect its legal rights, and those of its employee being deposed, in responding to the subpoenas."

Assuming, without holding, that Tetra Tech is entitled to indemnification for expenses and costs, Tetra Tech offered no evidence as to the amount of out-of-pocket expenses or costs related to either the subpoena or the deposition. The

---

not in defense of any claim brought against Tetra Tech, but rather were in furtherance of the lawsuit that Tetra Tech brought against NSAA.

14

Flowers affidavit provides the only summary judgment proof of how much money Tetra Tech spent in response to the subpoena and notice of deposition served on it in this litigation. Despite Tetra Tech's assertion that these expenses and costs "are set forth in the attached affidavit of Bruce M. Flowers," they are not. The Flowers affidavit provides only proof of attorney's fees incurred and makes no mention incidental expenses or costs. And, while it might be assumed that expenses and costs were incurred by Tetra Tech's attorney in travelling to Washington to attend the deposition, the affidavit does not address these expenses in any manner. The record is simply silent as to what those expenses amounted to, assuming that any such expenses were actually incurred.

For all of these reasons, the trial court properly denied Tetra Tech's motion for summary judgment and granted NSAA's cross-motion for summary judgment. We overrule Tetra Tech's sole issue.

## IV. Conclusion

Having overruled Tetra Tech's sole issue, we affirm the trial court's judgment.

/s/ Bonnie Sudderth
BONNIE SUDDERTH
JUSTICE

PANEL: GARDNER, GABRIEL, and SUDDERTH, JJ.

DELIVERED: June 16, 2016

15