

ACCEPTED
03-13-00817-CV
5417728
THIRD COURT OF APPEALS
AUSTIN, TEXAS
5/26/2015 2:14:36 PM
JEFFREY D. KYLE
CLERK

FILED
**June 9, 2015**
Third Court of Appeals
Jeffrey D. Kyle
Clerk

5608 Parkcrest Drive, Suite 200
Austin, Texas 78731
512.660.5960 main
512.660.5979 fax
www.rcmhlaw.com

RECEIVED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS

5/26/2015 2:14:36 PM

JEFFREY D. KYLE
Clerk

Emily J. Davenport
512.660.5974 direct
edavenport@rcmhlaw.com

May 26, 2015

Jeffrey D. Kyle, Clerk
Court of Appeals, Third District of Texas
P.O. Box 12547
Austin, Texas 78711-2547

Re:   Cause No. 03-13-00817-CV; *Seton Family of Hospitals, d/b/a Seton Medical Center v. Beverly J. Haywood*; In the 3rd Court of Appeals

Dear Mr. Kyle:

Appellant files this letter brief pursuant to Texas Rule of Appellant Procedure 38.7, in response to Appellee's letter dated May 11, 2015, discussing the *Ross* opinion. *Ross v. St. Luke's Hosp.*, No. 13-0439, 2015 WL 20009744 (Tex. May 1, 2015). A copy of the opinion is attached.

In *Ross*, a hospital visitor sued the hospital and a maintenance services company over a slip-and-fall that occurred in the hospital lobby. *Id.*, at 1. The claimant fell on an area of floor that was being cleaned and buffed as she was exiting the hospital. *Id.* The Court determined that the claim was not a health care liability claim because the record did not demonstrate a substantive relationship between the safety standards breached – maintenance of the floor inside the lobby exit doors – and the provision of health care. *Id.*

In reaching its decision, the Court held that although safety claims need not be directly related to health care for the Texas Medical Liability Act ("TMLA") to apply, there must be a "substantive nexus between the safety standards allegedly violated and the provision of health care." *Id.* at 6; TEX. CIV. PRAC. & REM. CODE §74.001(a)(13) (defining "health care liability claim"). The Court identified seven non-exclusive considerations for analyzing whether a claim is substantively related to the defendant's provision of health care: (1) Did the alleged negligence of the defendant occur in the course and scope of the defendant's performing tasks with the purpose of protecting patients from harm; (2) Did the injuries occur in a place where patients might be during the time they were receiving care, so that the obligation of the provider to protect persons who require special, medical care was

implicated; (3) At the time of the injury was the claimant in the process of seeking or receiving health care: (4) At the time of the injury was the claimant providing or assisting in providing health care; (5) Is the alleged negligence based on safety standards arising from professional duties owed by the health care provider; (6) If an instrumentality was involved in the defendant's alleged negligence, was it a type used in providing health care; (7) Did the alleged negligence occur in the course of the defendant's taking action or failing to take action necessary to comply with safety-related requirements set for health care providers by governmental or accrediting agencies? *Id*. On balance those factors show a substantial relationship between Haywood's claim and the provision of health care. *Ross*, 2015 WL 20009744, at *6.

Haywood's claim satisfies the first, second and fifth factors in *Ross*. Haywood asserts that the events – allegedly negligent operation of an automatic hospital unit door – occurred while a Seton employee was acting in the course and scope of her duties. (CR 4). The employee was a nurse, and the events occurred in hospital's emergency department, which is an area of the hospital where patients receive treatment. (CR 4). (RR 7). The incident implicates professional duties of safety.

Hospital services include those services required to meet patients' fundamental needs, such as safety. *Harris Methodist Fort Worth v. Ollie*, 342 S.W.3d 525, 527 (Tex. 2011) (finding that a patient's slip and fall on a wet bathroom floor was a health care liability claim and directly related to health care); *St. David's Healthcare Partnership, L.P., LLP v. Esparza*, 348 S.W.3d 904, 906 (Tex. 2011) (finding that permitting lubricating gel to fall and remain on the floor is inseparable from procedures for the disposition of gloves in a hospital and arises from accepted standards that should have been performed by the hospital during the patient's care). A nurse's safe operation of a hospital unit door in the hospital emergency department implicates professional duties of safety owed to Seton's patients. *Ollie*, 342 S.W.3d at 527 (relating to safety); *see also CHCA Bayshore, LP v. Salazar*, 2013 WL 1907888, at *5 (Tex.App.—Houston [14th Dist.] 2013, pet. denied) (applying the TMLA to an employee injury claim involving a malfunctioning automatic hospital door).

The third factor in *Ross* is not at issue. Haywood was not receiving health care when the event allegedly occurred. *Ross*, 2015 WL 20009744, at *6. However, Haywood's status as a non-patient does not exclude application of the TMLA. *Texas West Oaks Hosp., L.P. v. Williams*, 371 S.W.3d 171 (Tex. 2012).

It is unknown whether the fourth factor is met. *Ross*, 2015 WL 20009744, at *6. Haywood was not providing health care when the event occurred. Whether she was assisting the providers by her presence as a visitor has not been addressed.

The sixth factor is satisfied. *Ross*, 2015 WL 20009744, at *6. The instrumentality, an automatic hospital unit door, is subject to hospital licensing regulations to facilitate safe transfer and movement of patients and nurses. *See e.g.,* 25 TEX. ADMIN. CODE §133.162(d)(2)(A)(v)-(ix) (regulating doors, including corridor doors); *id*. at §133.163(f)(2) (requiring that details and finishes in emergency suites comply with section 133.162(d)(2)); 25 TEX. ADMIN. CODE §133.162(d)(1)(E) (requiring compliance with TEX. HEALTH & SAFETY CODE §256.002(b)(8)); TEX. HEALTH & SAFETY CODE §256.002(b)(8) (requiring hospitals to adopt and ensure implementation of policy to control risk of injury to patients and nurses associated with the lifting, transferring, repositioning, or movement of patients, partly through hospital architecture).

Automatic hospital doors are hospital equipment, and alleged departures from standards of safety in their use fall within the definition of health care liability claim. TEX. CIV. PRAC. & REM. CODE §74.001(a)(13); *CHCA Bayshore, LP v. Salazar*, 2013 WL 1907888, at *5 (Tex.App.—Houston [14th Dist.] 2013, pet. denied) (finding an employee's claim that she was injured by a malfunctioning automatic door was a health care liability claim because it implicated standards of safety, including proper training, equipment and supervision of hospital employees).

The seventh consideration in *Ross* is met to the extent Haywood's claim asserts that Seton failed to institute policy or properly train the nurse who activated the automatic door. *Ross*, 2015 WL 20009744, at *6. *See* 25 TEX. ADMIN. CODE §133.142(a)(3)(B) and (C) (requiring hospitals to develop, implement and enforce safety policies and procedures and establish safety training and continuing education); *Ollie*, 342 S.W.3d at 527 (regarding patient safety); *Diversicare General Partner, Inc. v. Rubio*, 185 S.W.3d 842, 850 (Tex. 2005). Although Haywood pleads that Seton is vicariously liable for the nurse, Haywood did not sue the nurse individually. (CR 3). The focus is on the essence of the claim and not the artfulness of the claimant's pleading. *Diversicare*, 185 S.W.3d at 851.

According to the analysis in *Ross*, there is a substantive nexus between the safety standards that Haywood alleges were violated (operation of a hospital unit door by a hospital employee acting in the course and scope of her duties) and the provision of health care (providing for safety of patients on a hospital unit). The fact that an incident could have occurred outside a hospital does not preclude it from being a health care liability claim. *Ross*, 2015 WL 20009744, at \*6; *see also Diversicare General Partner, Inc. v. Rubio*, 185 S.W.3d 842, 850 (Tex. 2005) ("The obligation of a health care facility to its patients is not the same as the general duty a premises owner owes to invitees.").

Based on the foregoing analysis, Appellee's claims against Appellant alleging a departure from accepted standards of safety by Appellant's registered nurse concerning the nurse's use and operation of the hospital unit door in question are safety standards-based claims that are substantively related to the provision of health care. Accordingly, this is a health care liability claim subject to the provisions of the TMLA. Appellee failed to satisfy the 120-day expert report requirement. As such, dismissal of her claim is mandatory and the trial court erred by denying Seton's motion to dismiss.

Respectfully Submitted,


/s/    Emily J. Davenport
Emily J. Davenport
edavenport@rcmhlaw.com
State Bar No. 24012501


## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief has been compiled using a computer program in Word with 14-point font conventional typeface for the body of the brief. Excluding the portions of the brief exempted pursuant to Rule 9.4 of the Texas Rules of Appellate Procedure, this brief contains 1,283 words.


/s/ Emily J. Davenport
Emily J. Davenport

## CERTIFICATE OF SERVICE

Pursuant to Rule 9.5 of the Texas Rules of Appellate Procedure, I hereby certify that a true and correct copy of the foregoing instrument has been sent by e-mail to the following counsel of record on this 26th day of May, 2015:

Robert C. Alden
Byrd, Davis Furman & Alden, LLP
707 West 34th St.
Austin, TX 78705
ralden@byrddavis.com


_____/s/ Emily J. Davenport_____
Emily J. Davenport

**2015 WL 2009744**

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION IN THE PERMANENT LAW REPORTS. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.
Supreme Court of Texas.

Lezlea Ross, Petitioner,
v.
St. Luke's Episcopal Hospital, Respondent

No. 13–0439 | Argued November 5, 2014 | OPINION DELIVERED: May 1, 2015

**Synopsis**
**Background:** Visitor brought action against hospital on premises liability theory after she slipped and fell near lobby exit doors. The 215th District Court, Harris County, dismissed action, finding that visitor's claim was a health care liability claim (HCLC) requiring service of expert report. The Court of Appeals affirmed, 2013 WL 1136613. Visitor's petition for review was granted.

**Holdings:** The Supreme Court, Johnson, J., held that:

[1] inconsistent lower court interpretations of Supreme Court case conferred jurisdiction on Supreme Court to address the issue;

[2] visitor raised issue in her appellate brief before Court of Appeals to degree necessary to preserve it for review before Supreme Court; and

[3] slip-and-fall claim was not an HCLC simply because the fall occurred in a hospital.

Reversed and remanded.

Lehrmann, J., issued concurring opinion in which Devine, J., joined.

West Headnotes (17)

[1] **Health**

⚷Actions and Proceedings

When a safety standards-based claim is made against a health care provider, the Medical Liability Act (TMLA) does not require the safety standards to be directly related to the provision of health care in order for the claim to be a health care liability claim (HCLC). Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13).

2 Cases that cite this headnote

[2] **Courts**

⚷Appellate jurisdiction of Supreme Court in general

Inconsistent appellate court interpretations of the Supreme Court case of *Texas West Oaks Hosp., LP v. Williams,* concerning the degree to which a safety standards-based claim must be related to health care in order to qualify as a health care liability claim (HCLC) within ambit of the Medical Liability Act (TMLA), conferred jurisdiction on Supreme Court to address the issue in case in which hospital visitor's slip-and-fall premises liability claim was dismissed upon finding that it was an HCLC requiring service of a medical expert report. Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13); Tex. Gov't Code Ann. § 22.225(c).

Cases that cite this headnote

[3] **Courts**

⚷Appellate jurisdiction of Supreme Court in general

For purposes of conferring jurisdiction upon Supreme Court, one lower court holds "differently" from another when there is inconsistency in their decisions that should be clarified to remove unnecessary uncertainty in the law. Tex. Gov't Code Ann. § 22.001(e).

Cases that cite this headnote

**[4]** **Appeal and Error**
🔑Scope and effect

In her appellate brief on appeal to Court of Appeals, visitor challenged trial court finding that her slip-and-fall premises liability claim against hospital was in fact a health care liability claim (HCLC) requiring service of medical expert report to a degree necessary to preserve the issue for review before the Supreme Court; in her original appellate brief, visitor discussed the purpose of the Medical Liability Act (TMLA) and asserted that classifying her claim as an HCLC would conflict with the Government Code, and the Court of Appeals implicitly determined that visitor's citations and argument were enough to avoid waiver because it addressed the issue. Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13); Tex. R. App. P. 38.1(I).

Cases that cite this headnote

**[5]** **Appeal and Error**
🔑Insufficient discussion of objections

Failure to provide citations or argument and analysis as to an appellate issue may waive it. Tex. R. App. P. 38.1(I).

Cases that cite this headnote

**[6]** **Appeal and Error**
🔑Cases Triable in Appellate Court

Review of lower court's construction of statute is de novo, and goal of appellate court is to give effect to legislative intent.

Cases that cite this headnote

**[7]** **Statutes**
🔑Language and intent, will, purpose, or policy

In determining legislative intent, courts look first and foremost to the language of the statute.

Cases that cite this headnote

**[8]** **Statutes**
🔑Plain Language; Plain, Ordinary, or Common Meaning
**Statutes**
🔑Defined terms; definitional provisions
**Statutes**
🔑Context
**Statutes**
🔑Relation to plain, literal, or clear meaning; ambiguity

Courts construe a statute's words according to their plain and common meaning unless they are statutorily defined otherwise, a different meaning is apparent from the context, or unless such a construction leads to absurd or nonsensical results.

Cases that cite this headnote

**[9]** **Statutes**
🔑Context

Determining legislative intent requires courts to consider the statute as a whole, reading all its language in context, and not reading individual provisions in isolation.

Cases that cite this headnote

**[10]** **Health**
🔑Affidavits of merit or meritorious defense;

expert affidavits

That visitor happened to slip and fall inside a hospital, near the hospital's lobby exit door, did not make her premises liability claim a health care liability claim (HCLC) requiring service of medical expert report pursuant to Medical Liability Act (TMLA); the cleaning and buffing of the floor near the exit doors was not for the purpose of protecting patients, the area where visitor fell was not one where patients might be during their treatment so that the hospital's obligation to protect patients was implicated by the condition of the floor at that location, and visitor was not seeking or receiving health care, nor was she a health care provider or assisting in providing health care at the time she fell. Tex. Civ. Prac. & Rem. Code Ann. §§ 74.001(a)(13), 74.351(a).

Cases that cite this headnote

[11]    **Health**
⚷Affidavits of merit or meritorious defense; expert affidavits

The purpose of the Medical Liability Act's (TMLA) expert report requirement is not to have claims dismissed regardless of their merits, but rather it is to identify and deter frivolous claims while not unduly restricting a claimant's rights. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a).

Cases that cite this headnote

[12]    **Health**
⚷Actions and Proceedings

A safety standards-based claim does not come within the Medical Liability Act's (TMLA) provisions just because the underlying occurrence took place in a health care facility, the claim is against a health care provider, or both. Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13).

Cases that cite this headnote

[13]    **Statutes**
⚷General and specific terms and provisions; ejusdem generis

Where the more specific items of a statute, (a) and (b), are followed by a catchall "other," (c), the "ejusdem generis doctrine" teaches that the latter must be limited to things like the former.

Cases that cite this headnote

[14]    **Health**
⚷Affidavits of merit or meritorious defense; expert affidavits

For a safety standards-based claim to be a health care liability claim (HCLC) requiring service of medical expert report, there must be a substantive nexus between the safety standards allegedly violated and the provision of health care, and that nexus must be more than a "but for" relationship. Tex. Civ. Prac. & Rem. Code Ann. §§ 74.001(a)(13), 74.351(a).

2 Cases that cite this headnote

[15]    **Health**
⚷Affidavits of merit or meritorious defense; expert affidavits

Although the mere location of an injury in a health care facility or in a health care setting does not bring a claim based on that injury within the Medical Liability Act (TMLA) so that it is a health care liability claim (HCLC) requiring service of a medical expert report, the fact that the incident could have occurred outside such a facility or setting does not preclude the claim from being an HCLC. Tex. Civ. Prac. & Rem. Code Ann. §§ 74.001(a)(13), 74.351(a).

Cases that cite this headnote

APPEALS FOR THE FOURTEENTH DISTRICT OF TEXAS

**Opinion**

Justice Johnson delivered the opinion of the Court.

**\*1** In this case a visitor to St. Luke's Episcopal Hospital sued the hospital on a premises liability theory after she slipped and fell near the lobby exit doors. The issue is whether her suit is a health care liability claim under the Texas Medical Liability Act. *See* TEX. CIV. PRAC. & REM. CODEE ch. 74. The trial court and court of appeals concluded that it is. We hold that it is not, because the record does not demonstrate a relationship between the safety standards she alleged the hospital breached—standards for maintaining the floor inside the lobby exit doors—and the provision of health care, other than the location of the occurrence and the hospital's status as a health care provider.

We reverse and remand to the trial court for further proceedings.

**I. Background**

Lezlea Ross accompanied a friend who was visiting a patient in St. Luke's Episcopal Hospital. Ross was leaving the hospital through the lobby when, as she approached the exit doors, she slipped and fell in an area where the floor was being cleaned and buffed. She sued St. Luke's and Aramark Management Services, a company that contracted with the hospital to perform maintenance services, on a premises liability theory. Aramark is not a party to this appeal.

[1]After Ross filed suit we decided *Texas West Oaks Hospital, L.P. v. Williams,* 371 S.W.3d 171 (Tex. 2012). There we held, in part, that when a safety standards-based claim is made against a health care provider, the Texas Medical Liability Act (TMLA), TEX. CIV. PRAC. & REM. CODEE ch. 74, does not require the safety standards to be directly related to the provision of health care in order for the claim to be a health care liability claim (HCLC). *Williams,* 371 S.W.3d at 186. Relying on *Williams,* the hospital asserted that Ross's claim was an HCLC and moved for dismissal of her suit because she failed to serve an expert report. *See* TEX. CIV. PRAC. & REM. CODEE § 74.351(a), (b) (requiring dismissal of an HCLC if a claimant fails to timely serve an expert report); *Williams,* 371 S.W.3d at 186.

---

**[16]** **Health**
🗝Affidavits of merit or meritorious defense; expert affidavits

The pivotal issue in a safety standards-based claim, for purposes of determining whether the claim is a health care liability claim (HCLC) requiring service of medical expert report, is whether the standards on which the claim is based implicate the defendant's duties as a health care provider, including its duties to provide for patient safety. Tex. Civ. Prac. & Rem. Code Ann. §§ 74.001(a)(13), 74.351(a).

Cases that cite this headnote

**[17]** **Health**
🗝Affidavits of merit or meritorious defense; expert affidavits

Non-exclusive considerations used to determine whether safety standards-based claim is substantively related to defendant's providing of health care and is therefore a health care liability claim (HCLC) requiring service of medical expert report include: whether alleged negligence occurred in course of defendant's performing tasks with purpose of protecting patients from harm; whether injuries occurred in place where patients might be during time they were receiving care, so that obligation of provider to protect persons who require medical care was implicated; whether, at the time of the injury, the claimant was in the process of seeking or receiving health care; and whether, at time of the injury, the claimant was providing or assisting in providing health care. Tex. Civ. Prac. & Rem. Code Ann. §§ 74.001(a)(13), 74.351(a).

2 Cases that cite this headnote

ON PETITION FOR REVIEW FROM THE COURT OF

The trial court granted the motion to dismiss. The court of appeals affirmed. *Ross v. St. Luke's Episcopal Hosp.,* ––– S.W.3d ––––– (Tex.App.–Houston [14th Dist.] 2013). The appeals court concluded that under *Williams* it is not necessary for any connection to exist between health care and the safety standard on which a claim is based in order for the claim to come within the TMLA. *Id.* at ––––.

Ross asserts that the lower courts erred because claims based on departures from "accepted standards of safety" do not come within the provisions of the TMLA unless there is at least some connection between the standards underlying the allegedly negligent actions and the provision of health care, even if they are not *directly* related. She then argues that her claims are not HCLCs because the hospital's alleged negligence is completely unrelated to the provision of health care.

The hospital responds with three arguments. It first urges that we lack jurisdiction. *See* TEX. GOV'T CODE § 22.001(a)(2), (3), (6). It next asserts that even if we have jurisdiction, Ross waived the issue of whether her claim is an HCLC because she failed to properly brief and urge it in the court of appeals. Third, the hospital addresses the merits by asserting that the court of appeals correctly held that a safety standards-based claim need not be related to health care to fall within the TMLA's provisions, but in any event Ross's claims are related to accepted standards of patient safety because she fell inside the hospital.

**\*2** We first address our jurisdiction. *See Rusk State Hosp. v. Black,* 392 S.W.3d 88, 95 (Tex. 2012) (noting that if a court does not have jurisdiction, its opinion addressing any issues other than its jurisdiction is advisory).

## II. Jurisdiction

[2]Texas Civil Practice and Remedies Code § 51.014(a)(10) permits an appeal from an interlocutory order granting relief sought by a motion to dismiss an HCLC for failure to file an expert report. Generally, the court of appeals' judgment is final on interlocutory appeals. *See* TEX. GOV'T CODE § 22.225(b)(3). However, we have jurisdiction if the justices of the court of appeals disagree on a question of law material to the decision, or if a court of appeals holds differently from a prior decision of another court of appeals or this Court. *Id.* § 22.225(c).

Ross asserts that this Court has jurisdiction because the court of appeals' opinion in this case conflicts with *Good*

*Shepherd Medical Center–Linden, Inc. v. Twilley,* 422 S.W.3d 782 (Tex.App.–Texarkana 2013, pet. denied). In that case, Bobby Twilley, the director of plant operations for a medical center, asserted premises liability claims against his employer after he fell from a ladder and also tripped over a mound of hardened cement. *Id.* at 783. The medical center moved for dismissal under the TMLA because Twilley failed to file an expert report. *Id.* at 783–84. The trial court denied the motion and the medical center appealed, arguing that even though Twilley's claims were unrelated to the provision of health care, under *Williams* they still fell within the ambit of the TMLA. The court of appeals interpreted *Williams* as holding that a safety standards-based claim need not be directly related to the provision of health care to be an HCLC. *Id.* at 789. The court stated, however, that it did not understand *Williams* to hold that a safety standards claim falls under the TMLA when the claim is completely untethered from health care. *Id.* The appeals court concluded that at least an indirect relationship between the claim and health care is required and, because Twilley's claims did not have such a relationship, an expert report was not required. *Id.* at 785.

[3]In this case the court of appeals held that under *Williams* "a connection between the act or omission and health care is unnecessary for purposes of determining whether Ross brings an HCLC." *Ross,* ––– S.W.3d at ––––. The hospital asserts that the decision of the court of appeals and *Twilley* do not conflict. But, for purposes of our jurisdiction, one court holds differently from another when there is inconsistency in their decisions that should be clarified to remove unnecessary uncertainty in the law. TEX. GOV'T CODE § 22.001(e). As other courts of appeals have noted, *Ross* and *Twilley* are inconsistent in their interpretations of *Williams* and the TMLA, leaving uncertainty in the law regarding whether a safety standards-based claim must be related to health care. *See, e.g., Weatherford Tex. Hosp. Co. v. Smart,* 423 S.W.3d 462, 467–68 (Tex.App.–Fort Worth 2014, pet. filed); *DHS Mgmt. Servs., Inc. v. Castro,* 435 S.W.3d 919, 922 & n.3 (Tex.App.–Dallas 2014, no pet.). That being so, we have jurisdiction and move to the hospital's waiver claim.

## III. Waiver

**\*3** [4]The hospital argues that Ross waived any challenge to her claim being classified as an HCLC by failing to argue the point or cite relevant authority in the court of appeals. We disagree.

[5]A brief in the court of appeals "must contain a clear and

concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(I). Failure to provide citations or argument and analysis as to an appellate issue may waive it. *See ERI Consulting Eng'rs, Inc. v. Swinnea,* 318 S.W.3d 867, 880 (Tex. 2010).

In her court of appeals brief, Ross discussed the purpose of the TMLA and asserted that classifying her claim as an HCLC would conflict with the Government Code. *See* TEX. GOV'T CODE § 311.021(3) (providing that when a statute is enacted, there is a presumption that "a just and reasonable result is intended"). The court of appeals implicitly determined that Ross's citations and argument were enough to avoid waiver because it addressed the issue. *See Republic Underwriters Ins. Co. v. Mex–Tex, Inc.,* 150 S.W.3d 423, 427 (Tex. 2004) (concluding that an argument in the court of appeals was not waived and noting that "we have instructed the courts of appeals to construe the Rules of Appellate Procedure reasonably, yet liberally, so that the right to appeal is not lost by imposing requirements not absolutely necessary to effect the purpose of a rule" (quoting *Verburgt v. Dorner,* 959 S.W.2d 615, 616–17 (Tex. 1997))). We agree with the court of appeals that Ross did not waive the issue.

## IV. Health Care Liability Claims

[6] [7] [8] [9] [10]The merits of the appeal require us to review the lower courts' construction of the TMLA. Under such circumstances our review is *de novo, Williams,* 371 S.W.3d at 177, and our goal is to give effect to legislative intent. *Certified EMS, Inc. v. Potts,* 392 S.W.3d 625, 631 (Tex. 2013). In determining that intent we look first and foremost to the language of the statute. *City of Rockwall v. Hughes,* 246 S.W.3d 621, 625 (Tex. 2008). We construe a statute's words according to their plain and common meaning unless they are statutorily defined otherwise, a different meaning is apparent from the context, or unless such a construction leads to absurd or nonsensical results. *See Tex. Lottery Comm'n v. First State Bank of DeQueen,* 325 S.W.3d 628, 635 (Tex. 2010). Determining legislative intent requires that we consider the statute as a whole, reading all its language in context, and not reading individual provisions in isolation. *See Union Carbide Corp. v. Synatzske,* 438 S.W.3d 39, 51 (Tex. 2014).

The TMLA defines a health care liability claim as:

> a cause of action against a health care provider or physician for

treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM. CODEE § 74.001(a)(13). This Court construed "safety" under the prior statute according to its common meaning as "the condition of being 'untouched by danger; not exposed to danger; secure from danger, harm or loss.' " *Diversicare Gen. Partner, Inc. v. Rubio,* 185 S.W.3d 842, 855 (Tex. 2005) (quoting BLACK'S LAW DICTIONARY 1336 (6th ed. 1990)). We also recognized that the Legislature's inclusion of the word "safety" in the statute expanded the statute's scope beyond what it would be if the statute only included the terms medical care and health care. *Id.* The Court explained its disagreement with the position of Chief Justice Jefferson who, in a concurring opinion, argued that some of the patient's claims arising from an assault by another patient were premises liability claims:

> **\*4** Rubio is not complaining about an unlocked window that gave an intruder access to the facility or a rickety staircase that gave way under her weight. All of her claims arise from acts or omissions that are inseparable from the provision of health care. We do not distinguish Rubio's health care claims from premises liability claims "simply because the landowner is a health care provider" but because the gravamen of Rubio's complaint is the alleged failure of Diversicare to implement adequate policies to care for, supervise, and protect its residents who require special, medical care.

*Id.* at 854.

The Legislature added the phrase "or professional or administrative services directly related to health care" to the definition of health care liability claim in 2003. *Compare* Act of May 30, 1977, 65th Leg., R.S., ch. 817, § 1.03(a)(4), 1977 Tex. Gen. Laws 2039, 2041, *repealed by* Act of June 2, 2003, 78th Leg., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884 (absence of language), *with* TEX. CIV. PRAC. & REM. CODEE § 74.001(a)(13) (language added). After that statutory amendment we addressed the "safety" part of the definition in *Omaha Healthcare Ctr., L.L.C. v. Johnson,* 344 S.W.3d 392 (Tex. 2011), and *Harris Methodist Fort Worth v. Ollie,* 342

S.W.3d 525 (Tex. 2011). Although the claims in both cases alleged general negligence, they were HCLCs because the underlying nature of the claims involved violations of safety standards directly related to the provision of health care, including protecting patients. *Johnson,* 344 S.W.3d at 394–95 (nursing home patient's death caused by a brown recluse spider); *Ollie,* 342 S.W.3d at 527 (post-operative patient's slip and fall on a wet bathroom floor). But given that the claims were based on injuries to patients and *were* directly related to the provision of health care, we did not address the issue of whether safety standard-based claims *must* be directly related to health care in order for them to be HCLCs. *Johnson,* 344 S.W.3d at 394 n.2; *Ollie,* 342 S.W.3d at 527 n.2.

The next year we considered whether a psychiatric technician's claims for injuries in an altercation with a patient were HCLCs. *Williams,* 371 S.W.3d at 181. In reaching our decision we specifically and separately analyzed both whether the claims were based on the health care provider's allegedly departing from standards for health care, and whether they were also based on its allegedly departing from standards for safety. *Id.* at 180–86. Regarding the safety standards issue, we reviewed the definition of HCLC and determined that the phrase "directly related to health care" modified the terms immediately before it—professional or administrative services—but not the word safety. *Id.* at 185. We said that "Williams'[s] claims are indeed for departures from accepted standards of safety. We conclude that the safety component of HCLCs need not be directly related to the provision of health care and that Williams'[s] claims against West Oaks implicate this prong of HCLCs." *Id.* at 186. Because we also concluded that Williams's claims were HCLCs because they were for departures from health care standards, our decision that his claims were HCLCs rested on alternative holdings that are both entitled to *stare decisis* treatment: the claims were for departures from health care standards and they were for departures from safety standards. *Id.*; *see State Farm Mut. Auto. Ins. Co. v. Lopez,* 156 S.W.3d 550, 554 (Tex. 2004) (distinguishing alternative holdings from dictum).

[11]The purpose of the TMLA's expert report requirement is not to have claims dismissed regardless of their merits, but rather it is to identify and deter frivolous claims while not unduly restricting a claimant's rights. *Scoresby v. Santillan,* 346 S.W.3d 546, 554 (Tex. 2011). And the Legislature did not intend for the expert report requirement to apply to every claim for conduct that occurs in a health care context. *See Loaisiga v. Cerda,* 379 S.W.3d 248, 258 (Tex. 2012). For example, in *Loaisiga* patients claimed that a doctor improperly touched them during the course of medical exams and thereby assaulted them. 379 S.W.3d at 253. The trial court concluded that the claim was not an HCLC and the court of appeals affirmed. *Id.* at 254. We pointed out that the statutory definition of "health care" is broad ("any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement" TEX. CIV. PRAC. & REM. CODEE § 74.001(10)), and that if the facts underlying a claim *could* support claims against a physician or health care provider for departures from accepted standards of medical care, health care, or safety or professional or administrative services directly related to health care, the claims were HCLCs regardless of whether the plaintiff alleged the defendants were liable for breach of the standards. *See Loaisiga,* 379 S.W.3d at 255. But that being so, we further explained:

> **\*5** we fail to see how the Legislature could have intended the requirement of an expert report to apply under circumstances where the conduct of which a plaintiff complains is wholly and conclusively inconsistent with, and thus separable from, the rendition of "medical care, or health care, or safety or professional or administrative services directly related to health care" even though the conduct occurred in a health care context. *See* TEX. CIV. PRAC. & REM. CODEE § 74.001(a)(13); *see also* TEX. GOV'T CODE § 311.021 ("In enacting a statute, it is presumed that ... a just and reasonable result is intended....").

*Id.* at 257. Our reasoning led to the conclusion that a patient's claim against a medical provider for assault during a medical examination is not an HCLC if the only possible relationship between the alleged improper conduct and the rendition of medical services or health care was the setting in which the conduct took place. *Id.*

In this case, the hospital advances two positions in support of the lower courts' rulings and its assertion that Ross's claim is an HCLC. First, it addresses slip and fall claims generally, and says that any slip and fall event within a hospital is directly related to health care because it necessarily is related to the safety of patients. Second, it focuses on Ross's claim specifically and argues that her claim is related to health care because she alleges the hospital breached standards applicable to maintaining a safe environment for patients. We disagree with both positions.

[12]As to the hospital's first contention, even though the claims in *Loaisiga* were by a patient and the nature of the claims differ from Ross's safety standards-based claim, the principle we explicated there applies here. A safety

standards-based claim does not come within the TMLA's provisions just because the underlying occurrence took place in a health care facility, the claim is against a health care provider, or both. *See Loaisiga,* 379 S.W.3d at 257.

As to its second contention, Ross alleged that the hospital failed to exercise reasonable care in making the floor safe. The standards Ross says the hospital breached regarding maintenance of its floor may be the same as the hospital's standards for maintaining a safe environment in patient care areas—but those may also be the same standards many businesses generally have for maintaining their floors. And the hospital does not claim, nor does the record show, that the area where Ross fell was a patient care area or an area where patients possibly would be in the course of the hospital's providing health care services to them. Nor does the hospital reference support in the record for the position that the area had to meet particular cleanliness or maintenance standards related to the provision of health care or patient safety. *See Ollie,* 342 S.W.3d at 527 ("[S]ervices a hospital provides its patients necessarily include those services required to meet patients' fundamental needs such as cleanliness ... and safety."). Which leads to the question of whether Ross's claims are nevertheless HCLCs, as the hospital would have us hold.

[13]The TMLA does not specifically state that a safety standards-based claim falls within its provisions only if the claim has some relationship to the provision of health care other than the location of the occurrence, the status of the defendant, or both. But the Legislature must have intended such a relationship to be necessary, given the legislative intent explicitly set out in the TMLA and the context in which "safety" is used in the statute. We said as much in *Loaisiga.* 379 S.W.3d at 257. Even though the statute's phrase "directly related to health care" does not modify its reference to safety standards, that reference occurs within a specific context, which defines an HCLC to be "a cause of action against a health care provider or physician for [a] treatment, [b] lack of treatment, [c] or other claimed departure from accepted standards of medical care, or health care, or safety." TEX. CIV. PRAC. & REM. CODE§ 74.001(a)(13). Where the more specific items, [a] and [b], are followed by a catchall "other," [c], the doctrine of *ejusdem generis* teaches that the latter must be limited to things like the former.[1] And here, the catchall "other" itself refers to standards of "medical care" or "health care" or "safety." Considering the purpose of the statute, the context of the language at issue, and the rule of *ejusdem generis,* we conclude that the safety standards referred to in the definition are those that have a substantive relationship with the providing of medical or health care. And if it were not so, the broad

meaning of "safety" would afford defendant health care providers a special procedural advantage in the guise of requiring plaintiffs to file expert reports in their suits regardless of whether their cause of action implicated the provision of medical or health care. We do not believe the Legislature intended the statute to have such arbitrary results. *See* TEX. GOV'T CODE § 311.021 ("In enacting a statute, it is presumed that ... a just and reasonable result is intended...."); *Synatzske,* 438 S.W.3d at 54 (declining to attribute to the Legislature an intent to require a meaningless, arbitrary procedural hurdle for injured persons to bring suit).

**\*6** [14] [15] [16]Thus, we conclude that for a safety standards-based claim to be an HCLC there must be a substantive nexus between the safety standards allegedly violated and the provision of health care. And that nexus must be more than a "but for" relationship. That is, the fact that Ross, a visitor and not a patient, would not have been injured but for her falling inside the hospital is not a sufficient relationship between the standards Ross alleges the hospital violated and the hospital's health care activities for the claim to be an HCLC. As we recognized in *Loaisiga,* "[i]n some instances the only possible relationship between the conduct underlying a claim and the rendition of medical services or healthcare will be the healthcare setting (*i.e.,* the physical location of the conduct in a health care facility), the defendant's status as a doctor or health care provider, or both." 379 S.W.3d at 256. But although the mere location of an injury in a health care facility or in a health care setting does not bring a claim based on that injury within the TMLA so that it is an HCLC, the fact that the incident could have occurred outside such a facility or setting does not preclude the claim from being an HCLC. The pivotal issue in a safety standards-based claim is whether the standards on which the claim is based implicate the defendant's duties as a health care provider, including its duties to provide for patient safety.

[17]As this case demonstrates, the line between a safety standards-based claim that is not an HCLC and one that is an HCLC may not always be clear. But certain non-exclusive considerations lend themselves to analyzing whether such a claim is substantively related to the defendant's providing of medical or health care and is therefore an HCLC:

> 1. Did the alleged negligence of the defendant occur in the course of the defendant's performing tasks with the purpose of protecting patients from harm;

> 2. Did the injuries occur in a place where patients might be during the time they were receiving care, so that the obligation of the provider to protect persons

who require special, medical care was implicated;

3. At the time of the injury was the claimant in the process of seeking or receiving health care;

4. At the time of the injury was the claimant providing or assisting in providing health care;

5. Is the alleged negligence based on safety standards arising from professional duties owed by the health care provider;

6. If an instrumentality was involved in the defendant's alleged negligence, was it a type used in providing health care; or

7. Did the alleged negligence occur in the course of the defendant's taking action or failing to take action necessary to comply with safety-related requirements set for health care providers by governmental or accrediting agencies?

Measuring Ross's claim by the foregoing considerations, it is clear that the answer to each is "no." The record does not show that the cleaning and buffing of the floor near the exit doors was for the purpose of protecting patients. Nor does the record reflect that the area where Ross fell was one where patients might be during their treatment so that the hospital's obligation to protect patients was implicated by the condition of the floor at that location. Ross was not seeking or receiving health care, nor was she a health care provider or assisting in providing health care at the time she fell. There is no evidence the negligence alleged by Ross was based on safety standards arising from professional duties owed by the hospital as a health care provider. There is also no evidence that the equipment or materials used to clean and buff the floor were particularly suited to providing for the safety of patients, nor does the record demonstrate that the cleaning and buffing of the floor near the exit doors was to comply with a safety-related requirement set for health care providers by a governmental or accrediting authority.

### V. Conclusion

Under this record Ross's claim is based on safety standards that have no substantive relationship to the hospital's providing of health care, so it is not an HCLC. Because her claim is not an HCLC, she was not required to serve an expert report to avoid dismissal of her suit. We reverse the judgment of the court of appeals and remand the case to the trial court for further proceedings.

Justice Lehrmann filed a concurring opinion, in which Justice Devine joined.

Justice Brown did not participate in the decision.

JUSTICE LEHRMANN, joined by JUSTICE DEVINE, concurring.

I join the Court's opinion and agree that the claims asserted in this case have no connection to the provision of health care. I write separately, however, to emphasize my concern that a statute intended to address the insurance crisis stemming from the volume of frivolous medical-malpractice lawsuits has become a nebulous barrier to what were once ordinary negligence suits brought by plaintiffs alleging no breach of any professional duty of care.

In *Texas West Oaks Hospital, LP v. Williams,* the Court held that a plaintiff's claim against a physician or health care provider may constitute a health care liability claim subject to the Texas Medical Liability Act even where no patient–physician or patient-health-care-provider relationship exists between the parties. 371 S.W.3d 171, 177–78 (Tex. 2012). In my dissent in that case, I disagreed with the Court's holding "that the mere peripheral involvement of a patient transforms an ordinary negligence claim into a health care claim." *Id.* at 194–95 (Lehrmann, J., dissenting). I lamented what I viewed as the Court's departure from the importance we had previously placed on the relationship between health care providers and their patients in concluding that a patient's claims were covered by the Act. *Id.* at 196–97 (citing *Diversicare Gen. Partner, Inc. v. Rubio,* 185 S.W.3d 842 (Tex. 2005)). The consequences of that departure are evident in cases like this, in which defendants who happen to be health care providers seek the protections of the Medical Liability Act with respect to claims that have nothing to do with medical liability.

The Court holds, and I agree, that a cause of action against a health care provider for a departure from safety standards is a health care liability claim only if it has a "substantive relationship" with the provision of medical or health care.[1] —— S.W.3d at ——. I write separately to emphasize the significance of the third and fifth factors, which consider whether the claimant was in the process of seeking or receiving health care at the time of the injury and whether the alleged negligence was based on safety standards arising from professional duties owed by the health care provider.

As we recognized in *Diversicare,* the duty of care that health care providers owe to their patients is fundamentally different from the duty of care owed to,

say, employees or visitors. 185 S.W.3d at 850–51 ("The obligation of a health care facility to its patients is not the same as the general duty a premises owner owes to invitees."). To that end, when we held in *Diversicare* that a nursing home resident's claim that she was sexually assaulted by another resident was a health care liability claim, we rejected the argument that the claim should be treated the same as that of a visitor who had been assaulted at the facility precisely because of the distinct nature of those duties. *Id.* We also distinguished the circumstances at issue in that case from hypothetical claims involving an "unlocked window that gave an intruder access to the facility" and a "rickety staircase that gave way," which we implied would not constitute health care liability claims. *Id.* at 854. These statements are consistent with our recognition that health care liability claims involve a "specialized standard of care" that is established by expert testimony. *Garland Cmty. Hosp. v. Rose,* 156 S.W.3d 541, 546 (Tex. 2004); *see also Jackson v. Axelrad,* 221 S.W.3d 650, 655 (Tex. 2007) (explaining that a physician's duty of care owed to a patient is that of "a reasonable and prudent member of the medical profession ... under the same or similar circumstances" (quoting *Hood v. Phillips,* 554 S.W.2d 160, 165 (Tex. 1977))).

In my view, focusing a safety-standards claim on the duty health care providers owe to their patients ensures that *Diversicare* 's hypothetical visitor-assault and rickety-staircase claims do not fall under the Medical Liability Act's umbrella. It also ensures that a covered cause of action will "implicate[ ] the provision of medical or health care" in accordance with the Court's holding in this case. —— S.W.3d at ——. With these considerations in mind, I respectfully join the Court's opinion and judgment.

**Parallel Citations**

58 Tex. Sup. Ct. J. 766

Footnotes

[1]   *Hilco Elec. Co–op. v. Midlothian Butane Gas Co.,* 111 S.W.3d 75, 81 (Tex. 2003) ("[T]he rule of *ejusdem generis* ... provides that when words of a general nature are used in connection with the designation of particular objects or classes of persons or things, the meaning of the general words will be restricted to the particular designation."); *see also* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 199 (2012) ("Where general words follow an enumeration of two or more things, they apply only to persons or things of the same general kind or class specifically mentioned.").

[1]   "Substantive" is defined as "considerable in amount or numbers: substantial." WEBSTER'S THIRD NEW INT'L DICTIONARY 2280 (2002).

---