# Supreme Court of Texas

No. 22-0308

Image API, LLC,

*Petitioner*,

v.

Cecile Young, Executive Commissioner of the Texas Health and Human Services Commission,

*Respondent*

On Petition for Review from the
Court of Appeals for the Seventh District of Texas

**Argued November 29, 2023**

CHIEF JUSTICE HECHT delivered the opinion of the Court.

By statute, the Texas Health and Human Services Commission "shall" contract for "annual independent external financial and performance audits" of Medicaid contractors, which "must be completed" before the end of the next fiscal year.[1] The court of appeals held that

---

[1] TEX. HUM. RES. CODE § 32.0705(b) ("The commission shall contract with an independent auditor to perform annual independent external financial and performance audits of any Medicaid contractor used in the commission's

these requirements are "directory", as opposed to "mandatory", and thus the commissioner did not act ultra vires in directing that a contractor be audited years after the period covered.[2] Labels aside, conducting timely, annual audits is not left to HHSC's discretion and is in that sense mandatory. But in this case, HHSC's noncompliance with the statutory mandate does not foreclose its use of the audit results. We therefore affirm the part of the court of appeals' judgment dismissing Image's claims arising from the 2016 audit. We reverse the part of the court of appeals' judgment dismissing the rest of Image's suit and remand the case to the trial court for further proceedings consistent with this opinion.

# I

HHSC "is the state agency designated to administer federal Medicaid funds"[3] and other benefits programs, such as SNAP[4] and TANF.[5] From 2009 to 2015, Image API, LLC provided services to HHSC

---

operation of Medicaid. The commission regularly shall review the Medicaid contracts and ensure that: . . . (3) to the extent possible, audits under this section are completed in a timely manner."); *id.* § 32.0705(d) ("An audit required by this section must be completed before the end of the fiscal year immediately following the fiscal year for which the audit is performed.").

[2] 683 S.W.3d 54, 62 (Tex. App.—Amarillo 2022).

[3] TEX. GOV'T CODE § 531.021(a) ("The commission is the state agency designated to administer federal Medicaid funds."); TEX. HUM. RES. CODE § 32.021(a) ("The commission is the single state agency designated to administer the medical assistance program provided in this chapter in accordance with 42 U.S.C. Section 1396a(a)(5).").

[4] Supplemental Nutrition Assistance Program.

[5] Temporary Assistance for Needy Families.

under the parties' Document Processing Services Agreement.[6] Image's job was to manage a processing center for incoming mail related to Medicaid and other benefits programs. This mail included benefits applications submitted on paper, which Image sorted, scanned, and then routed electronically to the appropriate place or person within HHSC's system.

The Agreement provided that HHSC would compensate Image using its "retrospective cost settlement model". HHSC made monthly payments to Image based on Image's estimated allowable costs plus a reasonable profit, subject to monthly and annual reviews to reconcile the payments with Image's actual allowable costs. In this process, Image was to provide HHSC access to its records, and HHSC was to conduct its regular audits according to agreed procedures. Image was contractually obligated to refund payments in excess of allowable costs. From 2009 to 2015, HHSC identified overpayments and requested corrections more than twenty times, and each time Image complied.

The Legislature has also made HHSC responsible for auditing certain contractors. Section 32.0705(b) of the Human Resources Code states that HHSC "shall contract with an independent auditor to perform annual independent external financial and performance audits of any Medicaid contractor used in the commission's operation of Medicaid."[7] "Medicaid contractor" is defined in subsection (a), as we

---

[6] The Agreement has been extended multiple times since this initial contract term.

[7] TEX. HUM. RES. CODE § 32.0705(b).

discuss fully below.[8] After imposing the audit requirement, subsection (b) provides that the "commission regularly shall review the Medicaid contracts and ensure" that various goals are met, including, "to the extent possible, [that] audits under this section are completed in a timely manner."[9] Subsection (d) imposes a concrete deadline: "An audit required by this section must be completed before the end of the fiscal year immediately following the fiscal year for which the audit is performed."[10]

In 2016, HHSC notified Image that an independent external firm would conduct an audit of Image's performance and billing for the years 2010 and 2011. Image cooperated fully with the audit, which was completed in 2017. The auditors ultimately concluded that HHSC had overpaid Image approximately $440,000 in costs relating to bonuses, holiday pay, overtime, and other unauthorized labor expenses that Image had incurred but that were not allowable under the Agreement.[11] HHSC wrote Image that to recoup the overpayments, it would begin deducting $73,500 per month from payments on Image's invoices and would continue doing so for six months, until the total amount had been recouped.[12]

---

[8] *Id.* § 32.0705(a).

[9] *Id.* § 32.0705(b)(3).

[10] *Id.* § 32.0705(d).

[11] Subsequent audits for 2012 through 2014 found an additional $1.4 million in overpayments, which are also at issue. For simplicity, we refer to the dispute here as being over the 2016 audit.

[12] HHSC expressly invoked Section 9.01 of its Uniform Contract Terms

Image sued HHSC's executive commissioner in her official capacity for engaging in ultra vires conduct.[13] Image alleged that the commissioner had no legal authority to conduct an untimely audit of Image, a Medicaid contractor, in violation of Section 32.0705(d). It sought a declaration that the 2016 audit for contract years 2010 and 2011 violated Section 32.0705(d). It also sought to enjoin HHSC from conducting or relying on any noncompliant audit.

Image moved for summary judgment. HHSC[14] filed a plea to the jurisdiction and a cross-motion for summary judgment,[15] asserting that it is both immune from suit and entitled to judgment on the merits because Image is not a Medicaid contractor under Section 32.0705(a)

and Conditions, which is incorporated into the Agreement. Section 9.01(a) addresses the right of either party to set off in its invoice or payment "any undisputed amount that a Party in good faith determines should be reimbursed to it or is otherwise payable to it by the other Party".

[13] "[A] suit against a state official can proceed even in the absence of a waiver of [sovereign] immunity" if the plaintiff pleads and proves that the official "acted without legal authority or failed to perform a purely ministerial act." *Hall v. McRaven*, 508 S.W.3d 232, 238 (Tex. 2017) (quoting *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009)).

[14] Though the commissioner is the only named defendant, Image's suit challenges the conduct of the agency, and so we will refer to HHSC as if it were the named defendant.

[15] In an ultra vires case, "the jurisdictional inquiry and the merits inquiry are [often] intertwined." *Chambers–Liberty Cntys. Navigation Dist. v. State*, 575 S.W.3d 339, 345 (Tex. 2019) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004)). Where a statutory violation is alleged, the court must "begin by considering the proper construction" of the statute alleged to be violated "because whether the [defendant's] conduct constitutes [an] ultra vires action[] that falls within an exception to governmental immunity depends on what the statute required of the [defendant]." *Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 583 (Tex. 2015) (citing *Miranda*, 133 S.W.3d at 227-228).

and because the deadline for audits of Medicaid contractors in Section 32.0705(d) is directory—or not judicially enforceable. The trial court denied Image's motion and HHSC's plea to the jurisdiction but granted HHSC's motion for summary judgment and signed a final judgment for the commissioner. The order does not give reasons for the court's ruling. Both parties appealed.[16]

The court of appeals agreed with Image that it is a Medicaid contractor under Section 32.0705(a),[17] but it also agreed with HHSC that the one-year deadline in Section 32.0705(d) is directory and therefore does not constrain the commissioner's discretion.[18] Because of its construction of subsection (d), the court held that HHSC's plea to the jurisdiction should have been granted. The court of appeals reversed that part of the trial court's judgment and rendered judgment dismissing Image's entire suit for want of jurisdiction.[19]

Only Image seeks review. The issues are whether it is a Medicaid contractor to which Section 32.0705 applies[20] and the consequences of

---

[16] Although the trial court ruled for HHSC on the merits, HHSC appealed on the ground that the court should have granted its plea to the jurisdiction and dismissed the case.

[17] 683 S.W.3d at 60.

[18] *Id.* at 62.

[19] *Id.*

[20] Image argues that HHSC cannot assert this challenge because it did not file its own petition for review. This is incorrect. "A party who seeks to alter the court of appeals' judgment must file a petition for review." TEX. R. APP. P. 53.1. The court of appeals' judgment reversed the trial court's denial of HHSC's plea to the jurisdiction and dismissed Image's lawsuit for want of jurisdiction. HHSC is content with that judgment and prays that it be affirmed.

HHSC's failure to comply with the one-year deadline for audits.

## II

We first consider whether Image is a Medicaid contractor.[21] A "Medicaid contractor" is defined by Section 32.0705(a)(2) as "an entity that . . . under a contract with the commission . . . performs one or more administrative services in relation to the commission's operation of Medicaid, such as claims processing, utilization review, client enrollment, provider enrollment, quality monitoring, or payment of claims."[22] Because the statute does not define "administrative services", the court of appeals looked to several dictionaries, which reflect that

---

Its argument that Image is not a Medicaid contractor is an alternative path to affirmance.

As we have explained, in an ultra vires case, jurisdiction and merits are intertwined. *See supra* note 15. Section 32.0705(d) imposes a deadline for audits of Medicaid contractors, which are defined in subsection (a). If Image is not a Medicaid contractor, then the 2016 audit did not violate subsection (d), the commissioner did not act ultra vires, and sovereign immunity requires that Image's lawsuit be dismissed. *See McRaven*, 508 S.W.3d at 234, 243-244 (upon concluding that McRaven did not act ultra vires, affirming the court of appeals' judgment dismissing Hall's suit for want of jurisdiction).

[21] Whether Image meets the statutory definition of Medicaid contractor is a mixed question of law and fact. *Cf. Helix Energy Sols. Grp., Inc. v. Gold*, 522 S.W.3d 427, 435 (Tex. 2017) ("A plaintiff's status as a seaman under the Jones Act is a mixed question of law and fact." (citing *Chandris, Inc. v. Latsis*, 515 U.S. 347, 369 (1995))). When the facts are uncontroverted—as they are here—the court may decide the mixed question as a matter of law. *See BPX Operating Co. v. Strickhausen*, 629 S.W.3d 189, 196 (Tex. 2021). The "trial court has no discretion in determining what the law is or applying the law to the facts, even when the law is unsettled." *In re State Farm Lloyds*, 520 S.W.3d 595, 604 (Tex. 2017) (cleaned up).

[22] TEX. HUM. RES. CODE § 32.0705(a)(2). The definition excludes a "health and human services agency as defined by Section 531.001, Government Code". *Id.* § 32.0705(a)(1).

7

*administrative*, when used as an adjective, connotes "office-y", secretarial, or ministerial tasks.[23] The court reasoned that Image's work of sorting, digitizing, and routing mail meets the basic definition of administrative services. The court further reasoned that Image performed its service "in relation to"—broadly speaking—HHSC's operation of Medicaid because the processed documents include applications for Medicaid benefits.[24] Turning to the statute's list of examples, the court concluded that Image's services facilitate "client enrollment, at the very least", pointing to HHSC's request for proposal (RFP) in response to which Image was hired.[25]

The 100-page RFP states that HHSC is seeking a document-processing vendor to make eligibility determinations for programs including Medicaid more efficient. Under the heading "Mission Statement", the RFP states: "HHSC's mission in this procurement is to procure services that will assist in its efforts to modernize the eligibility system and improve Texans' access to health and human service programs in a manner that assures the highest levels of quality, accuracy and efficiency." Under the heading "Mission Objectives", the RFP lists the programs, including Medicaid, for which it is seeking a vendor "to support the determination of client eligibility". Then it continues: "The procurement of document processing services supports

---

[23] *See* 683 S.W.3d at 58; *see also* TEX. GOV'T CODE § 311.011(a) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage.").

[24] *See* 683 S.W.3d at 58.

[25] *Id.* at 59.

the mission objectives described in this section." Those objectives include "obtain[ing] program and operational optimization of eligibility determination[s]" for Medicaid and other programs.

The Document Processing Services Agreement incorporates the RFP expressly. The Agreement also states that "HHSC's procurement of document processing services . . . will assist in its efforts to modernize the eligibility system and improve Texans' access to health and human service programs in a manner that assures the highest levels of quality, accuracy and efficiency." In an exhibit to the Agreement containing modifications to Image's proposal, Image acknowledges potential "increases in the number of Medicaid clients" and the effect of such an increase on Image's fees.

We agree with the court of appeals' conclusion. The parties dispute whether subsection (a)(2)'s inclusive example list modifies "administrative services" or "operation of Medicaid". But the examples listed—"claims processing, utilization review, client enrollment, provider enrollment, quality monitoring, or payment of claims"—are both "administrative services" and HHSC's "operation of Medicaid".[26]

---

[26] A Medicaid handbook prepared by the Kaiser Commission on Medicaid and the Uninsured states that:

Primary duties of a state Medicaid agency include:

- Informing individuals who are potentially eligible and enrolling those who are eligible.

- Determining what benefits it will cover in which settings.

- Determining how much it will pay for covered benefits and from whom it will purchase services.

- Processing claims from fee-for-service providers and making

9

The question is thus whether Image provides "administrative services in relation to" one of these processes or one that is similar in kind or class.[27] The RFP and the Agreement make clear that HHSC solicited document-processing services so that it could make accurate eligibility determinations faster, facilitating client enrollment.[28]

HHSC argues that administrative services means managerial services and that a Medicaid contractor "must have some role in the actual management of HHSC's Medicaid program." As HHSC points out,

capitation payments to managed care plans.

- Monitoring the quality of the services it purchases.

- Ensuring that state and federal health care funds are not spent improperly or fraudulently.

- Collecting and reporting information necessary for effective program administration and accountability.

- Resolving grievances by applicants, enrollees, providers and plans.

THE KAISER COMM'N ON MEDICAID & THE UNINSURED, THE MEDICAID RESOURCE BOOK 130 (Jan. 17, 2003) [hereinafter MEDICAID RESOURCE BOOK], https://www.kff.org/medicaid/report/the-medicaid-resource-book/.

[27] In *HILCO Electric Cooperative v. Midlothian Butane Gas Co.*, we said:

[T]he rule of *ejusdem generis* . . . provides that when words of a general nature are used in connection with the designation of particular objects or classes of persons or things, the meaning of the general words will be restricted to the particular designation. Thus, we hold that [the statutory phrase at issue in that case] . . . is limited to purposes similar in kind or class to the twenty-one identified categories.

111 S.W.3d 75, 81 (Tex. 2003) (citations omitted).

[28] *See* MEDICAID RESOURCE BOOK, *supra* note 26, at 130 (including "[i]nforming individuals who are potentially eligible and enrolling those who are eligible" among the primary duties of a state Medicaid agency).

there are dictionary definitions that equate *administrative* or *administration* with management or executive work.[29] In the governmental realm, there are many instances in which *administrative* is used in reference to managerial or skilled work, rather than routine or helping work.[30]

But importantly, administrative work is not always executive or managerial work. "[W]ords can have more than one meaning. . . . The fact that [a] word may sometimes be used to convey a different meaning is the very reason why we look for its common, ordinary meaning."[31] We

[29] *See, e.g.*, *Administration*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("The management or performance of the executive duties of a government, institution, or business; collectively, all the actions that are involved in managing the work of an organization."); *Administrative*, BLACK'S, *supra* ("Of, relating to, or involving the work of managing a company or organization; executive.").

[30] For example, administrative agencies like HHSC are governmental bodies, usually housed in the executive branch, "with the authority to implement and administer particular legislation." *Agency*, BLACK'S, *supra* note 29 (third definition). The head of the Office of Court Administration is its "administrative director". TEX. GOV'T CODE §§ 72.001(2), 72.012.

[31] *Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556, 563 (Tex. 2014) (plurality op.). We explained:

> To determine [an undefined statutory term's] *common, ordinary* meaning, we look to a wide variety of sources, including dictionary definitions, treatises and commentaries, our own prior constructions of the word in other contexts, the use and definitions of the word in other statutes and ordinances, and the use of the words in our rules of evidence and procedure.

*Id.*

Administrative services is not a commonly defined noun. But an administrative assistant is "a person whose job is to support an executive, group, department, or organization especially by handling administrative tasks (such as data entry, correspondence, filing, and scheduling

are also obligated to "read [statutory terms] in context".[32] Doing so, we think that if the Legislature had meant to limit the definition of Medicaid contractor to one who takes a lead in managing Medicaid, it would have said so expressly.

HHSC also argues that the parties' course of dealing confirms that Image is not a Medicaid contractor, pointing to a checkbox section of the parties' Agreement. One box that could have been checked but wasn't discusses the financial and performance audits required by Section 32.0705. The implication is that if the parties had considered Image to be a Medicaid contractor, the box would have been checked. Whatever evidentiary value the unchecked box may have,[33] it cannot overcome the language in the RFP and the Agreement acknowledging Image's role in assisting HHSC to optimize and modernize its eligibility-determination system.

We hold that Image is a Medicaid contractor under Section 32.0705(a).

### III

We turn to whether the court of appeals erred in its conclusion that the audit deadline imposed by Section 32.0705(d) is directory. The

---

appointments)". *Administrative assistant*, MERRIAM-WEBSTER (online version, last visited June 17, 2024); *see also Administrative assistant*, WIKIPEDIA (last visited June 17, 2024) (stating that an administrative assistant is "[i]n most instances . . . identical to the modern iteration of the position of secretary").

[32] TEX. GOV'T CODE § 311.011(a).

[33] None of the checkboxes in this section are checked, including the box next to the section requiring Image to procure and maintain certain insurance coverage.

12

statute provides:

> (b) The commission shall contract with an independent auditor to perform annual independent external financial and performance audits of any Medicaid contractor used in the commission's operation of Medicaid. The commission *regularly shall review the Medicaid contracts and ensure that*:
>
> . . .
>
> (3) *to the extent possible*, audits under this section are completed in a timely manner.
>
> . . .
>
> (d) An audit required by this section *must be completed* before the end of the fiscal year immediately following the fiscal year for which the audit is performed.[34]

The 2016 audit undeniably failed to meet the deadline in subsection (d).

The court of appeals agreed with HHSC that subsection (d)'s deadline is "mere[ly] a suggestion".[35] The court acknowledged that "a common man would read ['must'] as being mandatory".[36] But relying on this Court's caselaw, the court reasoned that the statute's lack of a penalty for noncompliance "creates the presumption that 'must be completed' is directory, as opposed to mandatory."[37] This presumption is "buttressed by other considerations", the court explained, including HHSC's heavy workload:

> Construing "must be completed" as authorizing only a year

---

[34] Tex. Hum. Res. Code § 32.0705(b)(3), (d) (emphases added).

[35] 683 S.W.3d at 60.

[36] *Id.* at 61.

[37] *Id.*

13

to begin and finish the annual audit could well hamper [the statute's] objective, given the plethora of other business conducted by the Commission. Unless one forgets, we are dealing with a bureaucracy engaged in many activities and serving many functions.[38]

Thus, "in the end," the lack of noncompliance penalty, coupled with HHSC's "many activities and . . . functions", led the court "to forgo the common man's interpretation of 'must'" and hold that subsection (d) "is directory, as opposed to mandatory."[39]

## A

The distinction between mandatory and directory timing provisions derives from our caselaw.[40] The usual case involves a statute or rule requiring an act to be performed within a certain amount of time prior to or during litigation or an administrative process—e.g., service of process on a state agency within thirty days of the filing of a petition for judicial review,[41] holding a hearing on property forfeiture within thirty days of the defendant's answer,[42] or filing a declaration of water use in an agency by a specified date[43]—and a party who failed strictly to

---

[38] *Id.*

[39] *Id.* at 61-62.

[40] *See, e.g.*, *Chisholm v. Bewley Mills*, 287 S.W.2d 943, 945 (Tex. 1956) ("There is no absolute test by which it may be determined whether a statutory provision is mandatory or directory.").

[41] *AC Ints., L.P. v. Tex. Comm'n on Env't Quality*, 543 S.W.3d 703 (Tex. 2018).

[42] *State v. $435,000.00*, 842 S.W.2d 642 (Tex. 1992).

[43] *Edwards Aquifer Auth. v. Chem. Lime, Ltd.*, 291 S.W.3d 392 (Tex. 2009).

comply. When construing such a provision, we first ask whether the statute expresses the timing requirement in mandatory language. Does it say that the act "shall" or "must" be performed within the prescribed time? "[I]n a statute", these words "are generally understood as mandatory terms that create a duty or condition."[44] Or does it instead say only that the act "may" or "should" be performed, indicating that it is directory?[45]

When mandatory language is used, the question becomes "what consequences follow a failure to comply."[46] The answer turns on whether a particular consequence is "explicit" in the text[47] or "logically necessary to accomplish the statute's purpose".[48] If a particular consequence is either, then "the courts will apply that consequence."[49] If no particular consequence is explicit or logically necessary, then we decline to create a statutory consequence for noncompliance, because that "is the Legislature's job, not ours."[50]

The mandatory–directory distinction can be confusing. We have

---

[44] *AC Ints.*, 543 S.W.3d at 709 (citing *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001)); *see also Smith v. Spizzirri*, 144 S. Ct. 1173, 1177 (2024) ("[T]he use of the word 'shall' 'creates an obligation impervious to judicial discretion.'" (quoting *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998))).

[45] TEX. GOV'T CODE § 311.016(1) ("'May' creates discretionary authority or grants permission or a power.").

[46] *AC Ints.*, 543 S.W.3d at 709 (quoting *$435,000.00*, 842 S.W.2d at 644).

[47] *Id.* at 714.

[48] *Id.* at 713.

[49] *Id.*

[50] *Id.*

labeled statutes using mandatory language as directory in the absence of an explicit or logically necessary consequence for noncompliance.[51] And "[a]lthough the word 'shall' is generally construed to be mandatory, it may be and frequently is held to be merely directory."[52] But we have never equated directory with *discretionary*. To the contrary, we have expressly disavowed such a reading. Recently, we said:

> Our law contains many such commands for agencies to undertake ministerial actions within a stated time, without any further statutory guidance on what happens if the command is broken. Such commands are part of *the law*; whether they prescribe a consequence, and whether they are characterized as "mandatory" or "directory," they are not mere suggestions to be disregarded.[53]

A statute requiring that an act be performed within a certain time, using words like shall or must, is mandatory. Whether the statute imposes a specific penalty for noncompliance is a separate question, but a mandatory timing provision is not rendered otherwise by the statute's

---

[51] *See id.* at 714 ("Because the Legislature expressed no particular consequence for failing to meet that deadline and none is logically necessary, we presume that the Legislature intended the requirement to be directory rather than mandatory . . . ."); *Chisholm*, 287 S.W.2d at 945 ("If the statute directs, authorizes or commands an act to be done within a certain time, the absence of words restraining the doing thereof afterwards or stating the consequences of failure to act within the time specified, may be considered as a circumstance tending to support a directory construction.").

[52] *Chisholm*, 287 S.W.2d at 945; *see also AC Ints.*, 543 S.W.3d at 708 (quoting *Chisholm*).

[53] *In re Stetson Renewables Holdings, LLC*, 658 S.W.3d 292, 295 (Tex. 2022); *see also AC Ints.*, 543 S.W.3d at 714 ("[J]ust because a provision . . . is directory does not make it a mere suggestion that can be disregarded at will.").

failure to state a penalty for noncompliance.[54] Applying these principles, Section 32.0705(d) is mandatory because it states that a statutorily required audit "must be completed" within the time prescribed.

## B

HHSC argues that subsection (b)(3) authorizes it to complete audits performed under Section 32.0705 later than the deadline in subsection (d). Subsection (b) states that "[t]he commission regularly shall review [its] Medicaid contracts and ensure that" certain benchmarks are met, including that "(3) to the extent possible, audits under this section are completed in a timely manner." As HHSC acknowledges, we must read subsections (b) and (d) together, "giving effect to each provision so that [neither] is rendered meaningless or mere surplusage."[55]

HHSC tries to harmonize the provisions this way: "[S]ubsection (b)(3) directs that the audit be conducted in a timely fashion but provides HHSC with authority to conduct an audit afterwards", whereas "subsection (d) directs what 'timely' means". But this reading cannot be correct because it renders meaningless subsection (d)'s statement that an audit "must be completed" by the end of the fiscal year following the audit year.

---

[54] *See Stetson*, 658 S.W.3d at 297 ("[E]ven when there is no judicially enforceable consequence of a broken deadline, a mandatory deadline can still be both *mandatory* and far from pointless."); *Chem. Lime*, 291 S.W.3d at 404 ("We have said that the word 'must' is given a mandatory meaning when followed by a noncompliance penalty but this does not suggest that when no penalty is prescribed, 'must' is non-mandatory." (cleaned up)).

[55] *TIC Energy & Chem., Inc. v. Martin*, 498 S.W.3d 68, 74 (Tex. 2016) (citing *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003)).

This reading is also undermined by the statute's history.[56] What is now Section 32.0705 was enacted in 1999 as Section 12.0123 of the Health and Safety Code.[57] Section 12.0123 contained the text in subsections (a) through (c) of Section 32.0705, but there was no subsection (d). Section 12.0123(b)(3) stated that the Commission "regularly shall review its Medicaid contracts and ensure that[] . . . to the extent possible, audits under this section are completed in a timely manner",[58] but "timely" was not defined. In 2015, the Legislature moved Section 12.0123 to Section 32.0705 of the Human Resources Code and amended it to add subsection (d).[59] If the Legislature had intended for HHSC to retain discretion on the timing of its audits of Medicaid contractors, it would not have amended the statute to say that the audits "must be completed" by a specific deadline.

Finally, subsections (b)(3) and (d) can be harmonized to give effect to the plain language of each. The focus of subsection (b) is on HHSC's duty to arrange for an annual independent external audit of its Medicaid contractors and on what its Medicaid contracts should say about these

---

[56] The history of the legislation is not the same thing as legislative history. *See Pruski v. Garcia*, 594 S.W.3d 322, 328 n.2 (Tex. 2020) (citing *Ojo v. Farmers Grp., Inc.*, 356 S.W.3d 421, 445 n.31 (Tex. 2011) (Willett, J., concurring in part)). "Variations in enacted text can lend helpful interpretive context" because "they boast the imprimatur of the Legislature as a whole." *Id.* (quoting *Ojo*, 356 S.W.3d at 445 n.31).

[57] Act of May 29, 1999, 76th Leg., R.S., ch. 1411, § 1.10, 1999 Tex. Gen. Laws 4761, 4766.

[58] *Id.*

[59] Act of March 26, 2015, 84th Leg., R.S., ch. 1, § 3.0016, 2015 Tex. Gen. Laws 1, 154-155.

audits. Because "text cannot be divorced from context",[60] subsection (b)(3) requires HHSC to "regularly . . . review [its] Medicaid contracts and ensure that" they support the timeliness benchmark. Subsection (d) then tells HHSC what timeliness is and sets a hard deadline: each audit "must be completed" by the end of the fiscal year following the audit year.

We reject HHSC's contention that subsection (b)(3) transforms subsection (d)'s (later enacted) "must" into a "may".

**IV**

HHSC's 2016 audit of Image thus failed to comply with the deadline in Section 32.0705. We turn finally to the consequences of that failure.

To avoid usurping the Legislature's authority, when an agency fails to comply with a statutory duty, the Judiciary may impose only consequences that are explicit in the statutory text or "logically necessary to accomplish the statute's purpose".[61] The "logically necessary" test is text-based too. We do not "choos[e] legal consequences without any direction from the text."[62] Doing so risks "trespass[ing] beyond the judicial realm and into the policy decisions that are proper for the [Legislature]."[63] And courts must be especially vigilant when

---

[60] *Worsdale v. City of Killeen*, 578 S.W.3d 57, 69 (Tex. 2019).

[61] *AC Ints.*, 543 S.W.3d at 713.

[62] *Id.*; *see Chem. Lime*, 291 S.W.3d at 404 ("The EAAA does not suggest that an applicant can be fined for a late filing or that the water allocated should be reduced accordingly. The only penalty the EAAA suggests is that late applications will not be considered.").

[63] *Stetson*, 658 S.W.3d at 293.

19

asked to "[f]ashion[] an extratextual judicial remedy against the executive branch", for doing so "creates a serious risk that the courts will intrude into the prerogatives of *both* other branches."[64]

Image concedes that a Medicaid contractor is liable in damages for fraudulent overcharges or payments in breach of contract. HHSC has made no such allegation against Image. Nor has Image disputed the overcharges found in HHSC's 2016 audit. Absent allegations of misconduct, Image argues, the consequence for a late audit under Section 32.0705(d) must be that HHSC cannot recoup payments identified as unallowable. This consequence is not explicit in the text, but Image argues it would serve Chapter 32's general purposes of "enabl[ing] the state to provide medical assistance on behalf of needy individuals and . . . to obtain all benefits for those persons authorized under the Social Security Act or any other federal act."[65] Disallowing recoupment of overpayments, Image argues, would serve this purpose by motivating HHSC to conduct timely audits, as it regularly does anyway under the retrospective cost settlement model for paying contractors. A contractor found to have charged HHSC costs for which reimbursement is not allowed can make adjustments when the overcharge is found in regular reviews or an annual audit when it can be difficult, as in this case, to repay overcharges years before. In Image's view, audits within the statutory deadline would ensure timely error correction, aid HHSC as a good steward of the public funds it is

---

[64] *Id.* at 297.

[65] TEX. HUM. RES. CODE § 32.001.

entrusted to administer, and maximize state funds available for medical assistance. HHSC should be able to use the results of late audits only prospectively, Image argues, ensuring that overcharges are corrected going forward.

Image's arguments are not unreasonable, but that is not the test for determining the consequences of an untimely audit under Section 32.0705(d). The test for a consequence not expressed in the statute is that it be "logically *necessary*" to give effect to the statute. Disallowance of recoupment does not give effect to Section 32.0705(d), much less Chapter 32 as a whole. There is no textual clue whatsoever that the result Image urges is what the Legislature intended.[66] An injunction prohibiting HHSC from collecting overpayments found by the 2016 audit would therefore be error.

We leave open the possibility that a Medicaid contractor could sue to stop an untimely audit from proceeding. But Image did not object to the 2016 audit at the time and complied with it fully. And, as we have noted, Image has not disputed the audit's findings.

We thus conclude that Image's action for a declaration that HHSC's 2016 audit was ultra vires and void, and for an injunction prohibiting HHSC from using the result of the audit or recouping overcharges from Image, must be dismissed. Because Image's request

---

[66] *See Stetson*, 658 S.W.3d at 296-297 ("Here, the 90-day deadline is unaccompanied by any textual indication that the Comptroller's failure to act could in any way suspend the legislature's unambiguous command that program eligibility must end on December 31.").

for relief regarding prospective audits has not been adjudicated,[67] we remand the case to the trial court for further proceedings.[68]

*　　*　　*　　*　　*

We hold that Image is a Medicaid contractor under Section 32.0705(a), and that the deadline in Section 32.0705(d) for auditing HHSC's Medicaid contractors is mandatory, but that HHSC's failure to meet the deadline does not preclude it from using the result of the audit or pursuing recoupment of overcharges found in the audit. We affirm the part of the court of appeals' judgment dismissing Image's claims arising from the 2016 audit for lack of jurisdiction, we reverse the part of the judgment dismissing the remainder of Image's suit, and we remand to the trial court for further proceedings consistent with this opinion.

Nathan L. Hecht
Chief Justice

**OPINION DELIVERED:** June 21, 2024

---

[67] Image's Second Amended Petition "seeks a declaration that HHSC may not commence any future audit of Plaintiff's performance under the contract later than 'the end of the fiscal year immediately following the fiscal year for which the audit is performed.'"

[68] HHSC has not argued that even if we determine that Image is a Medicaid contractor, the Agreement's audit provisions gave HHSC independent authority to audit Image after the deadline prescribed by Section 32.0705(d). Accordingly, we express no view on that issue.